LEIGH M. CLARK, Retired Circuit Judge.
A jury found defendant guilty of burglary in the first degree. The court fixed his punishment at imprisonment for twenty years and sentenced him accordingly.
The indictment alleged that the inhabited dwelling house involved was “owned by or in possession of,” and was “occupied by Lucile Rogers Palmer.”
According to the testimony of Mrs. Palmer, about eighty years of age, she owned the house and was living in it when it was burglarized on a night in April 1979. Also living in the house was a man by the name of Johnny Rodgers, who was sleeping in the front room of the house while Mrs. Palmer was sleeping in the back of the house. According to Mrs. Palmer’s further testimony, she was awakened about 1:00 A.M. by being beaten upon by one Jessie Berry. Two other people were in the room at the time, including appellant. Jessie did all the talking. She noted no affirmative conduct on the part of the other two men. She said that Berry also attacked and injured Rodgers. Berry took three hundred dollars from Mrs. Palmer. Thereafter the three left out of the door which had been broken into.
Defendant, twenty-two years of age, testified that he met Jessie Berry in Luverne a few hours before the burglary. He had *621 never known Jessie, but had heard of him. According to defendant’s testimony, he was driving an automobile owned by his grandfather. He said he and his brother had been riding around in it when they met Jessie Berry. They went to a house in Luverne, known as a place in which people assembled to drink. While there, Jessie Berry told him that “he wanted to got to his crib in Andalusia.” He further said, “On the street, crib is known as a place where you live, your home.” His testimony continued as follows:
“Q. I see. And, then, what did you say about that?
“A. I said, I had to think about it. “Q. Well, did you finally decide to come on and go to Andalusia?
“A. I told him I would bring him as long as I didn’t have to stay down here very long.
“Q. All right. Did he say anything to you about breaking in — going down here and breaking in anybody’s house or anything like that?
“A. Not at that time..
“A. We fooled around until about — late that night, and he said that he was ready to go. And, so, we got into the car and we began our journey on down here to Andalusia.
“Q. A1 right. Then, about what time of the night or early morning did you arrive at Andalusia? Just about now?
“A. I would say about midnight.
“Q. Do you know where you went?
“A. I am not that familiar with Andalusia.
“Q. Well, did it turn out to be the house of Lucile Palmer, that testified here a while ago?
“A. Yes, sir.
“Q. All right, now, when you first got there, just who did what and who said what?
“A. Well, when we first got out here, I was going to pull up in front of the house, because being a person’s crib, you always pull up in front of a person’s house, if you know them. And, Berry told me, naw. He said, back up in here. G-. damn it. Do what I say. That is his. words. Back up in here. And, so, I did.
“Q. Did he say at any time that he was going to hurt you if you didn’t do what he—
“Q. Go ahead and answer that.
“A. Yes, sir, he did.
“Q. Then what happened?
“A. Well, he got out of the vehicle and he went up on the porch. And, that is the last time I saw him right then— “Q. You saw him up on the porch? “A. I was motioning to get out of the car behind him and he told me, you stay here. You stay in the car.
“Q. And, you took that to be his house, his crib?
“A. Right. . . .
“Q. Now, go on from there, Larry. What happened then?
“A. Well, me and my brother were sitting in the car and I heard a voice, sounded like somebody was screaming, sounded like somebody was in trouble or something. And , I said, uh-uh, something wrong. I said, this ain’t right, something is happening, something going on. And, my curiosity was over powering me, and so I got out of the car. Then, when I got out of the car, I wanted to find out what was happening so I entered into the house.”
The witness further testified that he saw Jessie take the money off the woman, that he never helped Jessie that he never helped the woman and that he never did anything to help or to hurt, that they then came out of the front door and saw the police. He said that at that time he and his brother “went to the woods.” He denied having any intention to steal, burglarize or rob.
Soon after appellant was arrested, he gave a statement to the authorities after being fully advised as to his constitutional rights. There was no contention on the trial to the contrary. In that statement he *622 said that the other “fellow” with him and Jessie while they were together in Luverne, on the trip to Andalusia, and at the house that was burglarized, was a man by the name of Angelo. He did not say that the man was his brother. Also in the statement, the defendant said that he and Angelo remained in the automobile, that they did not go in the house, that he heard the woman scream and saw the police arrive and, “I pulled the key out of the switch, we hit the woods.” About two days after making his first statement, he called the authorities and made a statement more nearly in line with his testimony on the trial.
In urging that the evidence was insufficient to support the verdict finding defendant guilty, appellant lays stress upon what he refers to as the “undisputed testimony” and the “harmonious and consistent pattern” thereof “in favor of the defendant.” The test as to the sufficiency of evidence to justify a submission to the jury ■of the issue as to defendant’s guilt has been variously stated in innumerable cases. More often, perhaps, than otherwise it is said that the result of the test hinges on the question whether there is a conflict in the evidence materially bearing upon the crucial issue. In those cases, it is but natural that the line of differentiation is emphatically expressed, and sometimes exclusively expressed, in terms of reference to the disputed or undisputed character of the evidence. By this it is not meant that only in cases in which there is a conflict in the material evidence should the issue be submitted to the jury. To the contrary, even in cases in which the evidence is undisputed, the issue as to defendant’s guilt should be submitted to the jury if and when reasonable persons can draw contrary inferences therefrom as to defendant’s guilt. Stated otherwise, the issue should be taken from the jury if, but only if, the evidence having a material bearing upon the issue of guilt is undisputed and only one reasonable inference as to guilt vel non can be drawn therefrom.
“Where a case is tried by the court without the intervention of a jury, the credibility of the witnesses is, of course, a matter for the court to determine. On the other hand, where the case is tried by the court and a jury, the credibility of particular witnesses and the weight and value to be given to their testimony are questions exclusively for the jury, and this applies even in cases tried by the court and a jury where there is no conflict in the testimony." (emphasis supplied) . . . 23A C.J.S. Criminal Law § 1138b
It is stated in 23A C.J.S. Criminal Law § 1139:
“. . . Where, however, there is any evidence, however slight, on which the jury may justifiably find the existence or ,the non-existence of material facts in issue, and the evidence is conflicting, see supra § 1138c, or of such a character that different conclusions as to such facts reasonably may be drawn therefrom, the issue should be submitted to the jury for determination, even though the court does not believe the evidence, or is of the opinion that it is not sufficient to convict, or is doubtful whether the evidence presented will be convincing to the jury. .” (emphasis supplied).
Whether the evidence in this case was undisputed may itself be a matter of dispute, but even if there is no conflict in the evidence, the issue of defendant’s guilt was properly submitted to the jury if reasonable persons could infer therefrom that defendant was guilty. In Byrd v. State, 213 Ala. 333,104 So. 830 (1925) the principle is clearly and succinctly stated and authorities cited:
“It is the province of the jury, and not the court, to draw inferences of fact from the evidence susceptible of adverse inference. That is to say, when applied to criminal cases, the court may announce presumptions of law to the jury; the inferences of fact are for the jury in arriving at a verdict. The weight of evidence, the credibility of witnesses, and inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury alone. *623 Dillard v. State, 151 Ala. 92, 44 So. 396; Kennedy v. State, 147 Ala. 687, 688, 40 So. 658; Hornsby v. State, 94 Ala. 55, 10 So. 522; Gibson v. State, 89 Ala. 121, 8 So. . 98, 18 Am.St.Rep. 96; Hadley v. State, 55 Ala. 31; Mitchell v. State, 60 Ala. 26; Henderson v. State, 49 Ala. 20.”
In Reliford v. State, 37 Ala.App. 684, 75 So.2d 88 (1955), the court affirmed a conviction for the unlawful possession of prohibited liquor. The evidence was undisputed. State’s witnesses had testified that they found six gallons of whiskey about one hundred yards behind defendant’s barn inside the pasture and that there were glass jugs in the smokehouse of the same type as the jugs in which the whiskey was contained. There was also evidence as to paths leading through the barn by the place where the whiskey was found. Defendant testified that he had never been in that part of the pasture where the whiskey was found and that he knew nothing about the whiskey. He said the jugs in his smokehouse were to be used to put syrup in. He had something like an acre in cane sugar. The court held:
“In considering the court’s ruling on the motion to exclude the evidence we are required to take the evidence in its most favorable light for the "prosecution. Jones v. State, 33 Ala.App. 451, 34 So.2d 483; Womack v. State, 34 Ala.App. 487, 41 So.2d 429.
“It is also a legal truism that when the evidence affords inference adverse to the accused the question is one for the determination of the jury. Emerson v. State, 30 Ala.App. 89, 1 So.2d 604; Hargrove v. State, 147 Ala. 97, 41 So. 972.
“We are of the opinion the evidence submitted affords inference of defendant’s guilt and that it was sufficient, if believed by the jury beyond a reasonable doubt, to sustain the judgment of conviction. ...”
Appellant herein was not an inexperienced dullard. He had been in military service. He had graduated from MacArthur Technical College. He had been previously convicted of grand larceny. Although he expressed fear of personal violence upon him by Jessie Berry, he did not claim that Berry was armed. Furthermore, there is nothing in the evidence to indicate that appellant and his brother could not have manhandled Jessie if they cared to do so. The possibility of his innocence exists, but to say with assurance that the jury should have found him not guilty is to have expected of them a similar gullibility to that which defendant claims he had as to the professed innocent intention of Jessie Berry.
It was not contended by the State that appellant actually broke into the house. The issue between the parties and amply declared to the jury by the court was whether defendant aided or abetted Jessie Berry in the burglary. The issue was properly submitted to the jury, and the jury was well within its province in finding defendant guilty.
The trial court did not instruct the jury on the subject of duress, which appellant claims justified a verdict in favor of defendant. There was no request that the court instruct the jury on that subject. If a party desires that the court extend its oral charge to cover some applicable law, his remedy is to request a written charge on the subject. Lewis v. State, Ala.Cr.App., 372 So.2d 882, cert. denied, 372 So.2d 885 (1979); Thigpen v. State, Ala.Cr.App., 369 So.2d 291, cert. denied, 369 So.2d 297 (1979).
There is no error in the record prejudicial to defendant, and the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.