The sole issue in this case is whether a defendant who entered a plea of guilty to a capital offense, and who was sentenced to life without parole, is entitled to withdraw that plea of guilty and obtain a new trial in light of Beck v.Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); on remand, Beck v. State, 396 So.2d 645 (Ala. 1981) (wherein the Court held that the constitutionally infirm clause in Alabama's death penalty statute, which precluded trial judges from giving lesser included offense instructions in capital cases, could be severed from the death penalty statute).
When the state filed its petition for certiorari in this Court, there was pending here a case which presented the same issue. The case was Graham v. State, 403 So.2d 275 (Ala.Cr.App. 1980); cert. quashed 403 So.2d 286 (Ala. 1981). In Graham, the Court of Criminal Appeals upheld the conviction. In this case, a majority of the Court of Criminal Appeals, 412 So.2d 292, reversed Lane's conviction on "mandate of the Supreme Court of Alabama in Ritter v. State [403 So.2d 154 (Ala. 1981)] and authorities therein cited, and Ricardo [Recardo] Cook v. State, [(Ala.Cr.App.)] MS. 6 Div. 461, this day decided. . . ."
In Ricardo [Recardo] Cook v. State, [MS. 6 Div. 561, June 23, 1981] (1981), a majority of the judges of the Court of Criminal Appeals were of the opinion that ". . . every pre-Beck death case must be reversed, regardless of the lack of evidence on lesser offenses." In reaching this conclusion, the Court of Criminal Appeals has misapplied the law announced by this Court in Beck and Ritter v. State, 403 So.2d 154 (Ala. 1981), and has failed to apply the principles of law set forth in Graham v.State, 403 So.2d 275 (Ala.Cr.App. 1980), cert. quashed403 So.2d 286 (Ala. 1981).
This Court did not write an opinion in Graham, but the rationale upon which the judgment to quash the writ was based in Graham was that a plea of guilty voluntarily made in a case wherein the death penalty was not imposed waives all non-jurisdictional defects.[1] *Page 294 
What was the effect of Lane's plea of guilty which was voluntarily made and upon which his judgment of conviction was based and upon which he was sentenced to life imprisonment without parole?
One of the most basic principles of the criminal law was stated in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709,23 L.Ed.2d 274 (1969), where the Supreme Court opined:
 ". . . A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment. . . ."
395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279.
It is universally held that a voluntary plea of guilty waives all non-jurisdictional defects. Lancaster v. State,362 So.2d 271 (Ala.Crim.App. 1978), cert. den. 362 So.2d 272 (1978);Franklin v. United States, 589 F.2d 192, 194, 195 (5th Cir. 1979), cert. den. 441 U.S. 950, 99 S.Ct. 2177, 60 L.Ed.2d 1055.
The factual setting in this case is not dissimilar to the fact situation in Brady v. United States, 397 U.S. 742,90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Brady involved the Federal Kidnapping Statute which provided that only a jury could set a death penalty. Brady, charged under the Act, sought to avoid the death penalty, first, by waiving trial by jury and, when that was disallowed, by pleading guilty. The Supreme Court of the United States, a few years later, in United States v.Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), invalidated and severed the death penalty provision from the Federal Kidnapping Statute on the grounds that it tended to coerce defendants into waiving trial by jury or to plead guilty. When Brady was sentenced under the Federal Kidnapping Statute upon his plea of guilty, the Supreme Court of the United States had not invalidated the death penalty provision from the statute. The Court refused to set aside Brady's conviction. The Court opined:
 "It may be that Brady, faced with a strong case against him and recognizing that his chances for acquittal were slight, preferred to plead guilty and thus limit the penalty to life imprisonment rather than to elect a jury trial which could result in a death penalty. But even if we assume that Brady would not have pleaded guilty except for the death penalty provision of [the federal kidnapping statute], this assumption merely identifies the penalty provision as a `but for' cause of his plea. That the statute caused the plea in this sense does not necessarily prove that the plea was coerced and invalid as an involuntary act."
397 U.S. 742, 749-750, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747,757.
The Court added:
 "It is true that Brady's counsel advised him that [the federal kidnapping statute] empowered the jury to impose the death penalty and that nine years later in United States v. Jackson, supra, the Court held that the jury had no such power as long as the judge could impose only a lesser penalty if trial was to the court or there was a plea of guilty. But these facts do not require us to set aside Brady's conviction.
 "Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of *Page 295 
the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, cf. Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 376 [316], 92 L.Ed. 309
(1948), a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered.
 "The fact that Brady did not anticipate United States v. Jackson, supra, does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the state would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions."
397 U.S. 742, 756-757, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747,761.
In reaching the conclusion we reach in this case, we have considered the fact that the record indicates that Lane contended in his first petition for writ of error coram nobis that he had a defense of alibi. Lane v. State, 7 Div. 700 (Ala.Crim.App. 1979), cert. den. 386 So.2d 216 (Ala. 1979).
The decision of the Court of Criminal Appeals conflicts with this Court's decision in Graham v. State, 403 So.2d 275
(Ala.Cr.App. 1980), cert. quashed 403 So.2d 286 (Ala. 1981). It is due to be reversed and the cause remanded to that court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
[1] There is disagreement on this Court on whether a plea of guilty in a capital case when the death penalty is imposed also waives all non-jurisdictional defects. See dissenting opinion in Ritter v. State, 403 So.2d at p. 155. The Supreme Court of the United States has agreed to review the Ritter case. Certiorari was granted by the United States Supreme Court on October 13, 1981, ___ U.S. ___, 102 S.Ct. 376, 70 L.Ed.2d 200
and that case was remanded to us for further consideration in light of Reed v. State, on October 26, 1981; answer of this Court on remand from the United States Supreme Court dated December 11, 1981, held that the decision in Ritter was based on federal constitutional grounds. 412 So.2d 292 (1981).