Ronald H. Spears was charged in the Circuit Court of Madison County with the capital murder of his ex-wife. Through what was obviously a plea-bargained agreement, he pleaded guilty and was sentenced to life without parole. From that sentence he now appeals.
Appellant broke into his ex-wife's home on the night of January 23, 1980; he shot and seriously wounded a man who was there, and shot and killed his ex-wife. He was previously tried and convicted for assault with intent to murder the man, found guilty, and sentenced to 30 years.
In the instant case, charging the capital murder of his ex-wife, appellant entered a plea of guilty after three witnesses testified. During the testimony of the three witnesses, only one question was asked on cross-examination.
After the testimony of the three witnesses, the plea of guilty, and instructions from the trial court, the empaneled jury considered the case and returned a verdict of "guilty of murder during a burglary in the first degree." After the jury retired to consider the verdict, appellant's retained counsel informed the trial court that "Mr. Spears has elected to waive the jury's participation in the punishment phase." At sentencing, the State recommended "life without parole." This sentence was imposed by the trial court.
 I
Appellant questions the adequacy of the explanation of his constitutional rights by the trial court, and attacks the validity of the guilty plea as not having been knowingly and voluntarily made. The record fails to substantiate appellant's claims. First, there was an extensive colloquy between the trial court and appellant prior to the guilty plea; and second, the record contains an "Ireland" form signed by appellant, his retained attorney, and the trial judge.
Certain constitutional rights are waived by a guilty plea — the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront the accusers.Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274
(1969), holds that a knowing and voluntary waiver of those rights cannot be presumed *Page 176 
from a silent record. In this case, the record is far from silent.
The following portion of the colloquy between the trial court and appellant reveals compliance with Boykin, supra:
 "THE COURT: Before I accept your plea there are some things I want to make sure that you understand. If you have any questions about any matter let me know, if you don't understand anything I say let me know about that. All of these things are explained to you in this Court's Exhibit A in probably greater detail than I will explain them to you, but I want to make sure you understand and know what you are doing.
 "You understand that you do not have to plead guilty, you understand you have the right to plead not guilty?
"THE DEFENDANT: (Nodding head affirmatively).
 "THE COURT: Do you understand if you desire you are entitled to have a jury determine your guilt as well as to make a recommendation as to your sentencing?
"THE DEFENDANT: (Nodding head affirmatively).
 "THE COURT: Do you understand that in a jury trial the State would have the burden of proving your guilt beyond a reasonable doubt before you could be convicted?
"THE DEFENDANT: Yes.
 "THE COURT: You understand that in a jury trial you of course would have the right to know the names of any witnesses who might testify against you?
"THE DEFENDANT: Yes.
 "THE COURT: You would have the right to testify in your own defense, you understand you would have that right?
"THE DEFENDANT: (Nodding head affirmatively).
 "THE COURT: If you desire to do so, you don't have to, it's an election that a Defendant has a right to testify in his own defense, do you understand that right?
"THE DEFENDANT: (Nodding head affirmatively).
 "THE COURT: Do you understand you would have the right to question any witness who might give any evidence against you, you or your lawyers?
"THE DEFENDANT: (Nodding head affirmatively)."
The "Ireland" form, taken in conjunction with the colloquy between the trial court and the appellant, positively demonstrates compliance by the trial court with the Boykin
mandates. See Twyman v. State, 293 Ala. 75, 300 So.2d 124
(1974).
Appellant urges that the guilty plea was not knowingly and voluntarily entered because he was not informed of the intent element of the offense. The following portion of the colloquy between the trial court and appellant demonstrates appellant understood the charge against him.
 "THE COURT: Do you understand the charge against you in this case?
"THE DEFENDANT: Yes, sir.
 "THE COURT: Do you understand that you are charged with an offense which carries as a possible penalty death by electrocution?
"THE DEFENDANT: Yes, sir.
 "THE COURT: You understand that the alternative punishment to that is life imprisonment without parole?
"THE DEFENDANT: (Nodding head affirmatively).
 "THE COURT: Do you want me to read the indictment to you, that is the formal charge against you?
"MR. SANDLIN: We have read it, we waive it.
"THE COURT: You have read it and understand it?
"THE DEFENDANT: Yes, sir.
 "THE COURT: You don't feel like it is necessary to read it to you?
"THE DEFENDANT: No."
The indictment specifically charged an intentional killing.
Appellant relies on Henderson v. Morgan, 426 U.S. 637,96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), for the proposition that it is essential to a knowledgeable plea that a defendant in a capital case be informed of the gravamen *Page 177 
of the offense. In Henderson, the court held that the circumstances surrounding the accused's plea failed to satisfy its test for voluntariness because (1) neither defense counsel nor the trial court informed the accused that intent was a necessary element of the charged offense, (2) defense counsel did not stipulate to the existence of such intent, and (3) the accused made no factual statement to the court implying that he had such intent.
The case at bar is readily distinguished from Henderson, in that appellant acknowledged to the trial court an understanding of the charge against him. In Henderson, the court made a specific finding of fact from an evidentiary hearing in which his attorneys testified that the accused "was not advised by counsel or court, at any time, that an intent to cause the death or a design to effect the death of the victim was an essential element of Murder 2nd degree." There is no such finding of fact in the case presently before us.
In addition, there is a significant difference in the mental abilities of the accused in Henderson and the appellant in this case. In Henderson, the accused was a farm laborer with a seventh grade education who had been classified by the authorities as "retarded," whereas the appellant here completed high school, "got about three years of college," and was employed as an associate electrical engineer with the Tennessee Valley Authority. Without question, the appellant here possessed the requisite mental ability to intelligently comprehend the nature of the charge against him.
As this court has previously pointed out in Waldon v. State,394 So.2d 100 (Ala.Cr.App. 1981), the Henderson holding was very narrow. At any rate, the facts in Henderson are readily distinguishable from the facts of the case at bar.
Appellant further contends that error results from the failure of the trial court to inform appellant of the possibility of lesser included offenses. This contention is answered to appellant's detriment in Waldon, supra.
On the basis of the factual circumstances enumerated and the totality of the circumstances in this case, we are persuaded that the guilty plea was knowingly, intelligently, and voluntarily entered by the appellant. The burden of establishing the involuntary nature of the guilty plea is on the appellant, who must of necessity rely on the record. We find that he has failed to successfully carry that burden.
 II
Appellant contends that he was convicted of an offense different from the one for which he was indicted, and that he is therefore entitled to have the conviction set aside. We do not agree.
The thrust of this contention is that appellant was charged with "nighttime burglary of an occupied dwelling when any of the occupants is intentionally killed by the defendant," an offense under Alabama's 1975 Death Penalty Act, whereas he pleaded guilty to and was adjudicated guilty of "Murder during a burglary in the first degree," an offense under the 1981 Capital Offense Statute.
The pertinent portion of the indictment in this case is as follows:
 "The Grand Jury of said County charge, that before the finding of this indictment, RONALD H. SPEARS, also known as RONALD HUBERT SPEARS, also known as RONALD SPEARS, also known as RONNIE SPEARS, whose name is unknown to the Grand Jury other than as stated, did, in the nighttime, with intent to commit a felony, to-wit: Murder, knowingly and unlawfully break into and enter an inhabited dwelling, to-wit: the residence of Dorothy Guerin Spears, located at 516 Max Luther Drive, Huntsville, Madison County, Alabama, which inhabited dwelling was occupied by Dorothy Guerin Spears, a person lodged therein and while effecting entry or while in the inhabited dwelling or in immediate flight therefrom RONALD H. SPEARS, also known as RONALD HUBERT SPEARS, also known as RONALD SPEARS, also known as RONNIE *Page 178 
SPEARS, whose name is unknown to the Grand Jury other than as stated, was armed with a deadly weapon, to-wit: a pistol, and during the course of said nighttime burglary RONALD H. SPEARS, also known as RONALD HUBERT SPEARS, also known as RONALD SPEARS, also known as RONNIE SPEARS, whose name is unknown to the Grand Jury other than as stated, did intentionally cause the death of the said Dorothy Guerin Spears, by shooting her with a pistol, in violation of § 13A-5-31 (a)(4) of the Code of Alabama against the peace and dignity of the State of Alabama."
The effective date of the new criminal code was January 1, 1980, and this offense occurred on January 23, 1980. The 1975 capital punishment statute, as contained in §§ 13-11-1 through 13-11-9, Ala. Code 1975, was carried over intact to the new criminal code as §§ 13A-5-30 through 13A-5-38. These sections of the new criminal code were repealed effective July 1, 1981, by the 1981 Capital Offense Statute, but only as to conduct occurring after July 1, 1981. Therefore, conduct occurring before July 1, 1981, as is the case presently before us, is governed by the pre-existing law, i.e., §§ 13A-5-30 through 13A-5-38.
The indictment in this case specifically charges a violation of Code § 13A-5-31 (a)(4). This is the charge to which appellant entered his plea of guilty after assuring the court that he intended to plead guilty to "the same charge I am here for." Consequently, we are not persuaded that appellant's guilty plea was to some offense other than the one with which he was charged.
Both on brief and in oral argument, appellant urges that a different offense is presented by the references to murder during a "burglary in the first degree" in the trial court's colloquy with appellant, the trial court's oral jury charge, the jury verdict, and the judgment entry. We find no error in the references to "burglary in the first degree" rather than "nighttime burglary" because the factual allegations in the indictment constitute the offense of murder during a burglary in the first degree. The additional factual allegation in the indictment of appellant's being "armed with a deadly weapon, to-wit: a pistol" is the gratuitous averment, wherein the State charged and undertook to prove more than the minimum requirements of the statute. In this, we find no error.
 III
Appellant contends reversible error in that the trial court, without a jury, is not permitted to try or fix punishment in a capital case.
Appellant correctly relies on Prothro v. State, 370 So.2d 740
(Ala.Cr.App. 1979), and Youngblood v. State, 372 So.2d 34
(Ala.Cr.App. 1979), for the proposition that our law requires participation of a jury in both the guilt and penalty phases of a capital case. However, we find that Prothro and Youngblood
are not controlling here in view of the fact that appellant's guilty plea waives all nonjurisdictional defects, including the defect of which appellant complains. See Graham v. State,403 So.2d 275 (Ala.Cr.App. 1980), and Lane v. State, 412 So.2d 292
(Ala. 1982), and authorities cited therein. The Lane decision makes it abundantly clear that all nonjurisdictional defects are waived by a voluntary guilty plea in a capital case wherein the death penalty is not imposed.
Appellant argues that his guilty plea was not "accepted" by the trial court, but was presented to an empaneled jury. This contention is without merit in that it ignores the Prothro
requirement that guilty pleas must be submitted to a jury in capital cases. Furthermore, we find the trial court's "acceptance" of the guilty plea from the fact that it was referred to the empaneled jury.
In addition to the foregoing, we note that it was appellant who advanced the idea of dispensing with the jury for the punishment phase, such announcement having been made by appellant prior to the jury's returning the guilty stage verdict. Appellant *Page 179 
now claims error on something he obviously initiated. An accused cannot by his own voluntary conduct invite error and then seek to profit thereby. See Murrell v. State, 377 So. 1102
(Ala.Cr.App.), cert. denied, 377 So.2d 1108 (Ala. 1979), and authorities cited therein.
 IV
Appellant raises other issues concerning the adequacy of the trial court's oral charge, but these issues are raised for the first time on appeal. There were no objections interposed by appellant and no rulings by the trial court adverse to appellant; consequently, these matters are not preserved for appellate review. See Craft v. State, 402 So.2d 1135
(Ala.Cr.App. 1981); Green v. State, 382 So.2d 620
(Ala.Cr.App.), cert. denied, 382 So.2d 624 (Ala. 1980); Cliftonv. State, 359 So.2d 853 (Ala.Cr.App. 1978); Showers v. State,407 So.2d 169 (Ala. 1981); and Pinkard v. State, 405 So.2d 411
(Ala.Cr.App. 1981).
Based on the foregoing, the judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.