473 So.2d 1100 (1984)
Albert Lee JEFFERSON
v.
STATE of Alabama.
5 Div. 808.
Court of Criminal Appeals of Alabama.
March 20, 1984.
On Return to Remand August 14, 1984.
Rehearing Denied October 9, 1984.
*1101 F. Drexel Meadors and J. Donny Bolton, West Point, Ga., for appellant.
Charles A. Graddick, Atty. Gen., and William D. Little and Helen P. Nelson, Asst. Attys. Gen., for appellee.
TYSON, Judge.
Albert Lee Jefferson was indicted for robbery, when the victim is intentionally killed in violation of § 13A-5-31(a)(2), Code of Alabama 1975. The jury found the appellant guilty "as charged in the indictment" and recommended the death penalty by a vote of eleven to one. After a sentencing hearing, the trial judge independently weighed the aggravating and mitigating circumstances, and sentenced the appellant to death.[1]
On the night of April 16, 1981, the appellant and his accomplice, Eddie Lee Tucker, spent the night at the home of the appellant's girlfriend, Dianne Tucker, who was also Eddie Lee Tucker's sister-in-law. That night, the appellant told Eddie Lee Tucker he knew of a house which they could burglarize.
The next morning, April 17, 1981, before dawn, the appellant and Eddie Lee Tucker went to a house owned by Mildred Baldwin but which was unoccupied at the time. The appellant opened a window and crawled into the house and unlocked one of the *1102 doors so that Eddie Lee Tucker could enter. The two then began to search the house for valuables.
While they were upstairs in one of the bedrooms, the victim, Marion Morris Stone, drove up to the house in a pickup truck. Mrs. Baldwin hired the victim to do some painting and repair work at her house and had given him a key to the place. He would arrive at the house early each morning so he could open the door for the other workers who had been hired by Mrs. Baldwin.
As the victim entered the house, the appellant told Eddie Lee Tucker, "I'm going to kill the son-of-a-bitch" and then ran downstairs with his razor knife. The appellant viciously attacked the victim while he begged for his life. The victim died from an excessive loss of blood due to the fact that both of the jugular veins and the right carotid artery had been severed during the attack by Jefferson.
The appellant then took the victim's watch and billfold. He cut the telephone line and instructed Eddie Lee Tucker to paint a wall on which blood had splattered. The appellant tried to set the house on fire by placing an electric heater next to a lamp which was placed next to an electric blanket on a bed. Both the blanket and heater were turned on high.
The two then left the house with a CB radio, some clothes, jewelry and coins and went to Dianne Tucker's house. There, they burned their bloody clothes in the heater.
The appellant and Eddie Lee Tucker then fled to Atlanta. The appellant then went to Louisiana where he lived under an assumed name until he was arrested and returned to Alabama for trial.

I
Section 15-16-21, Code of Alabama 1975, provides, in part:
"If any person charged with any felony is held in confinement under indictment and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity ..."
Such a sanity inquiry was held in this case.
The appellant contends that the burden of proof as to the issue of insanity shifted from the defense to the State once the trial judge had reasonable ground to doubt his sanity.
This contention is wholly without merit. Every person over the age of fourteen is presumed sane. Ala.Code, § 15-16-2 (1975). The defense of insanity is an affirmative one and the burden of proof always rests with the accused and never shifts to the prosectuion. Cunningham v. State, 426 So.2d 484 (Ala.Cr.App.1982); Minniefield v. State, 47 Ala.App. 699, 260 So.2d 607 (1972); Christian v. State, 351 So.2d 623 (Ala.1977).
Merely because a reasonable doubt as to the accused's sanity must exist in the trial judge's mind in order to hold a sanity inquiry, the burden of proof does not shift.
Therefore, the trial judge properly charged the jury that the burden of proof as to insanity rested with the appellant.

II
The appellant alleges a reversal is required in this case due to the existence of a factual variance between the indictment and the verdict.
The indictment in this case charged that: "... Albert Lee Jefferson ... did feloniously take the said property of the aggregate value of one hundred dollars ($100.00), from Marion Morris Stone, from his person or his presence, against his will by violence to his person, or by putting him in such fear as unwillingly to part with the same, and in the course of committing said robbery, the said Albert Lee Jefferson and Eddie Lee Tucker did intentionally cause the death of another person, the said Marion Morris Stone, by cutting and stabbing him with a knife or knife like object ..." (R. 467).
The verdict of the jury reads as follows:
"We the jury find the defendant, Albert Lee Jefferson, guilty of murdering Marion Stone during the course of robbing *1103 Marion Stone in the first degree ..." (R. 569).
The appellant states that the decisions rendered in Watters v. State, 369 So.2d 1272 (Ala.1979) and Cook v. State, 369 So.2d 1260 (Ala.Cr.App.1979) mandate a reversal in this case. We cannot agree for several reasons.
First of all, in Watters and Cook, the indictments charged that the defendant in the course of committing robbery or an attempt to commit robbery, did intentionally kill the victim. The juries in the two cases found the defendants guilty of murder but failed to state that the murder occurred during the course of a robbery. A fatal variance was found to exist between the indictments and the jury verdicts in these cases because the indictments charged a capital offense while the jury verdicts did not reflect the same charge. The appellant in the case at bar was charged with a capital offense in this indictment and was found guilty of a capital offense. Therefore, no fatal variance exists.
Secondly, as the State points out in its brief, the Watters, supra, and Cook, supra, cases were decided prior to January 1, 1980. The definition of murder at that time was "the unlawful killing of a human being with malice aforethought." Napier v. State, 357 So.2d 1001 (Ala.Cr.App.1977), reversed on other grounds, 357 So.2d 1011 (Ala.1978). The case at bar arose after January 1, 1980 and murder is defined by § 13A-6-2(a)(1), Code of Alabama 1975 which states:
"A person commits the crime of murder if:
"With intent to cause the death of another person, he causes the death of that person."
Therefore, the present definition of "murder" is the intentional killing of another person. Thus, a fatal variance does not exist merely because "murder" was used in the jury verdict rather than "intentional killing" as was used in the indictment.
Lastly, the Alabama Supreme Court in Beck v. State, 396 So.2d 645 (Ala.1981) specifically overruled the Watters, supra, case and stated that each of the capital offenses required an intentional killing with aggravating circumstances.
Therefore, a fatal variance is not found to exist between the indictment and the jury verdict in this case, authorities cited.
We have thoroughly searched the record for error and find that none occurred during the guilt phase of the trial. Therefore, this appellant's conviction is hereby affirmed.

III
There are two issues involving the sentencing phase of the appellant's trial which require us to remand this cause with directions that a new sentencing hearing be held in this case.
First, the trial judge, following § 13A-5-46(f), Code of Alabama 1975, instructed the jury that a sentence of death must be based on a vote of at least ten jurors. However, § 13A-5-39 through § 13A-5-59, Code of Alabama 1975 only applied to conduct which occurred after 12:01 a.m., July 1, 1981. The act for which the appellant was tried occurred before these statutes went into effect and thus, § 13A-5-39 through § 13A-5-59, Code of Alabama 1975, were inapplicable to this appellant's case and should not have been used as a basis for instructions to the jury.
Secondly, the trial judge failed to instruct the jury "to avoid any influence of passion, prejudice, or other arbitrary factor while deliberating and fixing sentence" as required by Beck v. State, 396 So.2d 645 (Ala.1980). The case at bar was a post Beck case and the sentencing procedures outlined in Beck should have been followed, including the giving of the above-cited instruction.
These two errors require us to remand this cause for a new sentencing hearing. However, the appellant contends that upon remand, he can only be sentenced to life without parole.
The appellant's contention is founded upon the Alabama Supreme Court's statement in Beck, that "[i]f the jury cannot agree on a sentence of death, the defendant shall be sentenced to life imprisonment *1104 without parole." The appellant urges that the pronouncement in Beck required a unanimous verdict for a sentence of death and since one of the jurors in his case disagreed with the death sentence, he should be sentenced to life without parole.
While a unanimous verdict may have been required under Beck, the jury in the case at bar were instructed that a sentence of death verdict could be returned upon a vote of only ten jurors. The jury's verdict may have been different if they had been instructed that a unanimous verdict was required for a sentence of death.
The State points out in its brief, citing Dobbert v. Florida, 432 U.S. 282 at 294 n. 7, 97 S.Ct. 2290 at 2299 n. 7, 53 L.Ed.2d 344, that it cannot be assumed where the jury in a capital case votes with one understanding as to the effect of its vote, that the vote would remain the same had they had a different understanding of the effect of its vote on the sentence.
The jury in this case returned its verdict based on the understanding that ten jurors were required to return a death sentence verdict. It is entirely possible that the jury would have returned a unanimous verdict had they known it was required.
Therefore, we remand this case to the trial court with directions to empanel a new jury and hold a new sentencing hearing.
REMANDED WITH DIRECTIONS FOR A NEW SENTENCING HEARING.
All the Judges concur.

APPENDIX A

STATE OF ALABAMA

vs.

ALBERT LEE JEFFERSON, Defendant.

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

JUDGMENT AND SENTENCE AND FINDINGS BY THE COURT

SUMMARY OF FACTS
The defendant, Albert Lee Jefferson, and his accomplice, Eddie Lee Tucker, stayed overnight at the residence of defendant's girl friend, Dianne Barnes Tucker, and arose the next morning (April 17, 1981) before dawn to burglarize the unoccupied home of Mildred Baldwin which was not far away in Chambers County near Lanett. They went to the Baldwin home on foot, and when they arrived they opened a window and Jefferson crawled in and opened a door for Tucker. They searched the house for valuables, and determined to steal a C.B. radio, clothes and jewelry. About dawn or shortly after dawn, while Jefferson and Tucker were in an upstairs bedroom, they saw the victim, Marion Morris Stone, arrive outside in a pickup truck. The victim was a painter, and he was painting part of the interior of the house. When the victim entered the house, Jefferson took out his knife and went down the stairs, telling Tucker that he was going to kill the victim. A struggle between Jefferson and the victim ensued on the first floor of the house, and Jefferson overpowered the victim and, while the victim was pleading for his life, Jefferson cut the victim's throat numerous times, and cut all around the throat and neck (front, back and sides) severing three major blood vessels. The extensive loss of blood caused the victim to loose consciousness after several minutes, and to die several minutes thereafter. Tucker came down the stairs and saw the body and the blood. Jefferson then took the victim's watch, wallet and pocket knife. After dragging the body into a hall, cutting the telephone line, and attempting to paint over some of the blood on the walls and start a fire in an upstairs bedroom, Jefferson and Tucker gathered up their "loot" and fled on foot to the Dianne Tucker house, where they burned their bloody clothes in a wood-burning stove. Jefferson and Tucker were seen running from the Baldwin house toward the Tucker house. After determining that the stolen clothes would not fit Dianne Tucker, they were taken some distance away and placed in a garbage receptacle. Jefferson and Tucker then fled to Atlanta, and soon thereafter *1105 Jefferson fled to Louisiana where he lived under an assumed name until he was captured.

AGGRAVATING CIRCUMSTANCES
Two aggravating circumstances are found to exist.
First, the murder and robbery of the victim by this defendant were committed during a burglary of the Baldwin house.
Second, the murder of the victim was especially heinous, atrocious and cruel compared to other capital offenses. The killing was unnecessary; the defendant had several opportunities to leave the house without committing the murder. The last opportunity occurred after the victim had been overpowered and was pleading for his life. The victim had no weapon (other than a pocket knife which he never removed from his pocket), and Jefferson did not have to kill to protect himself or secure his escape. Furthermore, the savage brutality of the attack, evidenced by the wounds inflicted, demonstrate that Jefferson was either indifferent to the victim's suffering, or that he derived a perverse, barbaric enjoyment from it. No other aggravating circumstances are found to exist.
Comparing this killing to other capital murder cases before this Court, the present case stands out as being particularly heinous, atrocious and cruel. This is the fifth capital murder case presented to this Court, and it is appropriate, and we believe necessary, to distinguish the circumstances in this case from those in the four prior cases. The first three were murder-robbery cases of three men who were accomplices in the murder and robbery of the proprietor of a small country store in Randolph County (the three were Hayes, Prothro and Thomas). Hayes entered the store with a shotgun (single shot) with one or both of his accomplices, presented the shotgun and demanded the money. The proprietor responded that he had a gun, too, and presented a .25 automatic pistol. While one of the accomplices grabbed the proprietor from behind and attempted to take the pistol from him, the pistol was in the proprietor's hand and pointed at Hayes, who fired one fatal shotgun blast into the victim's chest. Unconsciousness was almost instantaneous. When Hayes' case was called for trial, this Court approved a guilty plea to life without parole because the death was not drawn-out or torturous, and the fatal shot was prompted by the victim's present ability to kill the defendant. Prothro and Thomas were tried separately, and each was found guilty by the jury and sentenced to life imprisonment without parole, it being obvious that the accomplices should not be given more severe sentences than the "trigger-man". It is appropriate to note that each of the defendants was Black, and the victim was White.
The other capital case presented to this Court involved the killing, kidnapping and rape of a seven year old girl by a seventeen year old boy (the Danny Ash murder of Wendy Mancil). This Court approved a guilty plea to life without parole after it came to the Court's attention that the sexual assault occurred after the victim was dead, that the proof of a kidnapping was tenuous, and that the State conceded that the mitigating circumstances outweighed the aggravating circumstances. It was a brutal and unexplainable murder committed by a very young man who had no criminal record, and who at the time of the killing was under substantial mental and emotional stress. While the murder was heinous, atrocious and cruel, the mitigating circumstances outweighed this one aggravating circumstance.

MITIGATING CIRCUMSTANCES
In each of the four cases cited above, this Court found mitigating circumstances which justified the lesser sentence. We have been unable to find mitigating circumstances in this case. In particular, (1) the defendant has four prior felony convictions, which we find to be significant prior criminal activity; (2) the defendant was not under the influence of extreme mental or emotional disturbance; (3) the victim did not participate in or consent to defendant's conduct; (4) the defendant was the primary *1106 actor in this crime; (5) the defendant was not acting under extreme duress or under substantial domination of another person; (6) there was no impairment of the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law; (7) the defendant's age is not a mitigating factor; and (8) there are no other mitigating factors or circumstances which the Court has been able to find which in any way mitigate, excuse or justify this killing, or to suggest that the punishment should be anything less than death. In summary, this Court has found no mitigating facts or circumstances from the evidence in this case, from the pre-sentence report, from the sentencing hearing, or from anything else involved in this case.

JUDGMENT AND SENTENCE
In Open Court and in the presence of the defendant and his attorneys, after considering the evidence in this case, the pre-sentence report, all matters offered at the sentencing hearing, and all other matters properly before the Court, the Court finds, and it is the JUDGMENT of this Court, that Albert Lee Jefferson is guilty of murdering Marion Morris Stone during the course of robbing said Marion Morris Stone, as charged in the indictment; that there are two aggravating circumstances and no mitigating circumstances; and that the recommendation of the jury should be followed and the penalty of death imposed.
In Open Court and in the presence of the defendant and his attorneys, the Court asked the defendant if he had anything to say before the Court passed sentence, or if he had anything to say as to why the sentence of the Court should not now be imposed upon him, and the response was duly recorded by the Court Reporter, and it is made a part hereof by reference.
It is the SENTENCE of this Court that the Defendant, Albert Lee Jefferson, be punished by DEATH.
Execution of this Sentence is suspended pending automatic appeal, and bail pending appeal is denied. Defendant, being indigent, may prosecute his appeal in forma pauperis.
This 26th day of July, 1983.
 /s/ James A. Avary
 Circuit Judge

ON RETURN TO REMAND
TYSON, Judge.
On March 20, 1984, this court unanimously affirmed this appellant's conviction for robbery when the victim is intentionally killed in violation of § 13A-5-31(a)(2), Code of Alabama 1975, but we remanded the case to the trial court with directions that a new sentencing hearing be conducted.
A new sentencing hearing was held and the jury unanimously recommended the appellant be sentenced to death. After independently weighing the aggravating and mitigating circumstances, the trial judge sentenced the appellant to death.[1]
This cause is now before us so that we may determine if death was the proper sentence for this appellant under this record. Ala.Code § 13A-5-53 (1975).
We do not find anything contained in the record which indicates this particular sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. The trial judge gave appropriate instructions on this subject and there is no evidence of partiality by the jury nor the trial judge either for or against this appellant.
The trial judge found two aggravating circumstances existed in this case and both are clearly supported by the evidence presented in this case. First, the trial judge found that the appellant committed this grave offense while he was in the process of burglarizing a house at which the victim happened to be working. Secondly, *1107 the trial judge determined this crime to be especially heinous, atrocious and cruel compared to other capital offenses. The victim was completely unaware of the appellant's presence in the house when he arrived and the appellant could have easily left the house without being detected or coming into contact with the victim. Instead, he chose to kill the victim for no apparent reason. The appellant viciously attacked the victim and brutally slashed his throat numerous times with a razor knife, while the victim pled for his life. The victim was fully conscious during the entire attack and he did not lose consciousness for several minutes following this attack. After the appellant killed the victim, he ordered his accomplice to paint over the blood which had spattered on the walls. This murder can certainly be characterized as especially heinous, atrocious and cruel.
The trial judge could not, nor can we, find the existence of any mitigating circumstances in this case. The two aggravating circumstances clearly outweigh the mitigating circumstances.
This sentence of death is not excessive or disproportionate to the penalties imposed in similar cases. See Baldwin v. State, 456 So.2d 117 (Ala.Crim.App.1983), affirmed, 456 So.2d 129 (Ala.1984); Weeks v. State, 456 So.2d 395 (Ala.Crim.App.1983). Even though the appellant's accomplice received a life sentence, we do not find that this appellant's sentence is too harsh or excessive. The accomplice in this case did not participate in the actual killing and even told the appellant not to kill the victim. In fact, the appellant threatened to kill the accomplice if he left or interfered. See Womack v. State, 435 So.2d 754 (Ala.Crim. App.1983), affirmed 435 So.2d 766 (Ala. 1983).
This record does not reveal any errors which adversely affected the rights of the appellant.
Therefore, after our independent review of the record and the particular circumstances of this case, we find that the sentence of death imposed on this appellant by the trial judge was, in all respects, proper. The judgment of the trial court is hereby affirmed. The appellant's sentence of death is also due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.

APPENDIX A

STATE OF ALABAMA

vs.

ALBERT LEE JEFFERSON, Defendant.

CASE NO. CC-81-77

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

JUDGMENT AND SENTENCE AND FINDINGS BY THE COURT

SUMMARY OF FACTS
The facts established by the evidence at the trial on the issue of guilt and the first trial on the issue of punishment, are as follows.
The defendant, Albert Lee Jefferson, and his accomplice, Eddie Lee Tucker, stayed overnight at the residence of defendant's girl friend, Dianne Barnes Tucker, and arose the next morning (April 17, 1981) before dawn to burglarize the unoccupied home of Mildred Baldwin which was not far away in Chambers County near Lanett. They went to the Baldwin home on foot, and when they arrived they opened a window and Jefferson crawled in and opened a door for Tucker. They searched the house for valuables, and determined to steal a C.B. radio, clothes and jewelry. About dawn or shortly after dawn, while Jefferson and Tucker were in an upstairs bedroom, they saw the victim, Marion Morris Stone, arrive outside in a pickup truck. The victim was a painter, and he was painting part of the interior of the house. When the victim entered the house, Jefferson took out his knife and went down the stairs, telling Tucker that he was going to kill the victim. A struggle between Jefferson *1108 and the victim ensued on the first floor of the house, and Jefferson overpowered the victim and, while the victim was pleading for his life, Jefferson cut the victim's throat numerous times, and cut all around the throat and neck (front, back and sides) severing three major blood vessels. The extensive loss of blood caused the victim to lose consciousness after several minutes, and to die several minutes thereafter. Tucker came down the stairs and saw the body and the blood. Jefferson then took the victim's watch, wallet and pocket knife. After dragging the body into a hall, cutting the telephone line, and attempting to paint over some of the blood on the walls and start a fire in an upstairs bedroom, Jefferson and Tucker gathered up their "loot" and fled on foot to the Dianne Tucker house, where they burned their bloody clothes in a wood-burning stove. Jefferson and Tucker were seen running from the Baldwin house toward the Tucker house. After determining that the stolen clothes would not fit Dianne Tucker, they were taken some distance away and placed in a garbage receptacle. Jefferson and Tucker then fled to Atlanta, and soon thereafter Jefferson fled to Louisiana where he lived under an assumed name until he was captured.
The evidence at the second trial on the issue of punishment reestablished substantially all of the facts recited above. Any change or omission of testimony or other evidence in this second trial on the issue of punishment does not change or alter any facts recited above which would be material to a determination of the existence of aggravating or mitigating circumstances or the weighing of any such circumstances, or otherwise be material to the question of appropriate punishment in this case.

AGGRAVATING CIRCUMSTANCES
Two aggravating circumstances are found to exist.
First, the capital offense, the intentional killing and robbery of the victim by this defendant, was committed during a burglary of the Baldwin house by this defendant.
Second, the capital offense, the intentional killing and robbery of the victim by this defendant, was especially heinous, atrocious and cruel compared to other capital offenses. The killing was unnecessary; the defendant had several opportunities to leave the house without committing the murder. The last opportunity occurred after the victim had been overpowered and was pleading for his life. The victim had no weapon (other than a pocket knife which he never removed from his pocket), and Jefferson did not have to kill to protect himself or secure his escape. Furthermore, the savage brutality of the attack, evidenced by the wounds inflicted, demonstrate that Jefferson was either indifferent to the victim's suffering, or that he derived a perverse, barbaric enjoyment from it.
No other aggravating circumstances are found to exist.
Comparing this killing to other capital murder cases before this Court, the present case stands out as being particularly heinous, atrocious and cruel. This is the fifth capital murder case presented to this Court, and it is appropriate, and we believe necessary, to distinguish the circumstances in this case from those in the four prior cases. The first three were murder-robbery cases of three men who were accomplices in the murder and robbery of the proprietor of a small country store in Randolph County (the three were Hayes, Prothro and Thomas). Hayes entered the store with a shotgun (single shot) with one or both of his accomplices, presented the shotgun and demanded the money. The proprietor responded that he had a gun, too, and presented a .25 automatic pistol. While one of the accomplices grabbed the proprietor from behind and attempted to take the pistol from him, the pistol was in the proprietor's hand and pointed at Hayes, who fired one fatal shotgun blast into the victim's chest. Unconsciousness was almost instantaneous. When Hayes' case was called for trial, this Court approved a guilty plea to life without parole because the death was not drawn-out or torturous, and the fatal shot was prompted by the victim's *1109 present ability to kill the defendant. Prothro and Thomas were tried separately, and each was found guilty by the jury and sentenced to life imprisonment without parole, it being obvious that the accomplices should not be given more severe sentences than the "trigger-man." It is appropriate to note that each of the defendants was Black, and the victim was White.
The other capital case presented to this Court involved the killing, kidnapping and rape of a seven year old girl by a seventeen year old boy (the Danny Ash murder of Wendy Mancil). This Court approved a guilty plea to life without parole after it came to the Court's attention that the sexual assault occurred after the victim was dead, that proof of a kidnapping was tenuous, and that the State conceded that the mitigating circumstances outweighed the aggravating circumstances. It was a brutal and unexplainable murder committed by a very young man who had no criminal record, and who at the time of the killing was under substantial mental and emotional stress. While the murder was heinous, atrocious and cruel, the mitigating circumstances outweighed this one aggravating circumstance.

MITIGATING CIRCUMSTANCES
In each of the four cases cited above, this Court found mitigating circumstances which justified the lesser sentence. We have been unable to find any mitigating circumstances in this case. In particular, (1) the defendant has four prior felony convictions, which we find to be significant prior criminal activity; (2) the defendant was not under the influence of extreme mental or emotional disturbance; (3) the victim did not participate in or consent to defendant's conduct; (4) the defendant was the primary actor in this crime; (5) the defendant was not acting under extreme duress or under substantial domination of another person; (6) there was no impairment of the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law; (7) the defendant's age is not a mitigating factor; and (8) there are no other mitigating factors or circumstances which the Court has been able to find which in any way mitigate, excuse or justify this killing, or to suggest that the punishment should be anything less than death. In summary, this Court has found no mitigating facts or circumstances from the evidence in this case, from the pre-sentence report, from the sentencing hearing, or from anything else involved in this case.

JUDGMENT AND SENTENCE
In Open Court and in the presence of the defendant and his attorneys, after considering the evidence in this case, the pre-sentence report, all matters offered at the sentencing hearing, and all other matters properly before the Court, the Court finds, and it is the JUDGMENT of this Court, that Albert Lee Jefferson is guilty of robbing Marion Morris Stone and during the course of said robbery, intentionally killing Marion Morris Stone, as charged in the indictment; that there are two aggravating circumstances and no mitigating circumstances; and that the recommendation of the jury should be followed and the penalty of death imposed.
In Open Court and in the presence of the defendant and his attorneys, the Court asked the defendant if he had anything to say before the Court passed sentence, and if he had anything to say as to why the sentence of the Court should not now be imposed upon him, and his responses were duly recorded by the Court Reporter, and they are made a part hereof by reference.
It is the SENTENCE of this Court that the Defendant, Albert Lee Jefferson, be punished by DEATH.
Execution of this Sentence is suspended pending automatic appeal, and bail pending appeal is denied. Defendant, being indigent, may prosecute his appeal in forma pauperis.
This 24th day of May, 1984.
 /s/ James A. Avary
 Circuit Judge
NOTES
[1] The trial court's findings of fact and sentencing order are attached as Appendix A.
[1] The trial court's sentencing order dated May 24, 1984, is hereto attached and made a part hereof, as Appendix A. (Volume 1, R. 188-193).