Albert Lee Jefferson, the defendant herein, was indicted and convicted for the murder of Marion Morris Stone while robbing him, in violation of § 13A-5-31 (a)(2), Ala. Code 1975 (repealed 1981).[1] Following a sentencing hearing, wherein the aggravating and mitigating circumstances of the case were considered and weighed, the jury recommended the death sentence by a vote of eleven to one. The trial court held a second sentencing hearing and, after independently weighing the aggravating and mitigating circumstances, sentenced the defendant to death. The Court of Criminal Appeals affirmed the conviction based on the guilt-finding phase of the trial, but found error in the sentence-determining phase and remanded for a new sentencing hearing.[2]
On remand, the defendant was sentenced to death according to the guidelines set forth in Beck v. State, 396 So.2d 645 (Ala. 1981).[3] The original sentencing order, dated July 26, 1983, was vacated and replaced thereafter by an order dated May 24, 1984.[4] The Court of Criminal Appeals affirmed the death sentence in its "On Return to Remand" opinion dated August 14, 1984, and later overruled the defendant's application for rehearing. The defendant then filed a petition for writ of certiorari, which we granted. We affirm.
The facts are set out in the opinion of the Court of Criminal Appeals in this case. See 473 So.2d 1100.
The defendant contends that the trial court erred to reversal during the sentence-determining *Page 1112 
phase of his trial and urges this Court to remand for a new sentencing hearing. He first argues that it was improper for the jury to be instructed upon, and the trial court to find, as an aggravating circumstance, the fact that he committed the indicted capital offense while engaged in the commission of a burglary. We disagree.
Section 13A-5-35 (4), Ala. Code 1975,[5] in pertinent part, reads as follows:
"Aggravating circumstances shall be the following:
". . . .
 "(4) The capital felony was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit . . . burglary. . . ."
In Beck v. State, supra, at 663, the Court stated:
 "In Alabama, the aggravating circumstances constitute an element of the capital offense and are required to be `averred in the indictment' (Code 1975, § 13-11-2), and must be proved beyond a reasonable doubt. Consequently, the jury verdict that the defendant was guilty of committing the capital offense would mean that the State had already established at least one aggravating circumstance, even though the legislature did not include an aggravating circumstance in § 13-11-6 to correspond with the `aggravation' made a part of each capital offense by § 13-11-2 (a). In addition, the State would be permitted to offer evidence of any other aggravating circumstance contained in § 13-11-6, which was not `averred in the indictment' but which was proved beyond a reasonable doubt at trial or by the evidence taken at the sentencing hearing. The jury would weigh the one or more aggravating circumstances found to exist in the case in determining whether to impose the death penalty." (Emphasis added.)
In the present case, the evidence clearly shows that the indicted capital offense occurred during the commission of a burglary. The trial court, thus, committed no error in instructing the jury upon, and subsequently finding, this aggravating circumstance.
The defendant next argues that the intentional killing of the victim in this case was not especially heinous, atrocious, or cruel, an aggravating circumstance on which the jury was instructed and which was found by the trial court under § 13A-5-35 (8), Ala. Code 1975. He insists that the killing was not conscienceless or pitiless and unnecessarily torturous to the victim, within the meaning of Ex parte Kyzer, 399 So.2d 330
(Ala. 1981). Again, we disagree.
The trial court, in its finding and summary of facts, stated:
 "When the victim entered the house, Jefferson took out his knife and went down the stairs, telling Tucker that he was going to kill the victim. A struggle between Jefferson and the victim ensued on the first floor of the house, and Jefferson overpowered the victim and, while the victim was pleading for his life, Jefferson cut the victim's throat numerous times, and cut all around the throat and neck (front, back and sides) severing three major blood vessels. The extensive loss of blood caused the victim to lose consciousness after several minutes, and to die several minutes thereafter."
The trial court, in its finding of aggravating circumstances, continued:
 "The killing was unnecessary; the defendant had several oportunities to leave the house without committing the murder. The last opportunity occurred after the victim had been overpowered and was pleading for his life. The victim had no weapon (other than a pocket knife which he never removed from his pocket), and Jefferson did not have to kill to protect himself or secure his escape. Furthermore, the savage brutality of the attack, evidenced by the wounds inflicted, *Page 1113 
demonstrate that Jefferson was either indifferent to the victim's suffering, or that he derived a perverse, barbaric enjoyment from it."
The evidence overwhelmingly supports the findings of the trial court that the killing was conscienceless or pitiless and unnecessarily torturous to the victim. Of special significance is the fact that the victim did not lose consciousness until several minutes after the attack. Dr. Gilchrist, a forensic pathologist with the Montgomery Laboratory of the Alabama Department of Forensic Science, testified as follows:
 "COURT — Just a few questions, doctor. You testified that in your opinion the cause of death was multiple lacerations of the neck or whatever technical terms you used to describe them?
 "A. Neck, face and head, but actually the neck was the most serious area involved.
 "COURT — Well, cutting yourself or just being cut will not normally cause death, will it?
 "A. It depends on the seriousness of the organ that is cut.
 "COURT — Explain to the jury why those lacerations in this case caused the death of this person?
 "A. In this case there were three quite vital structures that were injured, the two jugular veins, and the carotid artery on the right side, which is a major artery in the body, which resulted in extensive bleeding plus loss of blood supply to the head and brain because of the compromising of these vessels. These factors led to death as a direct result of the cutting of the neck.
"COURT — In other words, he bled to death.
 "A. He bled to death and also, loss [of] blood supply to the brain, that would come through this artery.
 "COURT — Were you able to form an opinion as to how long this person would live after these wounds were inflicted upon him?
"A. Within certain limits, yes.
"COURT — Would you give us your best judgment?
 "A. Assuming all these injuries occurred at approximately the same time, the autopsy findings are certainly consistent with, I would expect an individual would live for several minutes following this damage. The most rapidly fatal injury would be the one to the carotid artery since the pressure to this artery is much higher than it is in the veins and therefore the bleeding is brisker.
 "COURT — You say it would take several minutes to die?
 "A. It would take several minutes to lose consciousness, and then a few minutes after that to die unless something is done to correct the situation.
 "COURT — During the several minutes of consciousness, what effect would these wounds have on a person's ability to walk, talk, move around or otherwise be mobile or in control of his physical capabilities?
 "A. It might alter his ability to talk because of the injuries to the neck and the bleeding in that area, but until such time as enough blood was lost or there was a failure of blood supply to the head, a person lost consciousness, with these wounds a person could still use his arms or legs in the normal fashion.
 "COURT — In other words, he could get up and walk around with his throat cut like that?
 "A. Until such time as he lost consciousness, yes sir.
 "COURT — He would have several minutes I suppose, that he could move around?
"A. Yes sir.
 "COURT — Would there be any shock associated with this type of injury?
 "A. The loss of blood could indeed lead to shock. In terms of emotional shock, it depends on the individual, I am sure there was a tremendous amount or a very significant amount of external bleeding, in fact, the cut to the artery, the blood would probably spurt a distance and this indeed could lead to quite *Page 1114 
a bit of emotional shock plus the fact that these injuries were being caused to his body.
 "COURT — You were not able to tell whether or not actual physical shock was [sic] resulted from these injuries in this particular case?
 "A. Well, physical shock was [sic] due to loss of blood was almost certainly a factor. The term, shock, that we use is generally blood loss shock. And since I think blood loss was a significant factor in this man's death, I would have expected shock to have been one of the final events prior to his death, and that was shock due to blood loss.
"COURT — Before or after unconsciousness?
 "A. Well, a person could go into shock before he lost consciousness, but I think the events would have occurred relatively close together."
This case is comparable to Dunkins v. State, 437 So.2d 1349
(Ala.Cr.App.), affirmed, 437 So.2d 1356 (Ala. 1983), cert.denied, ___ U.S. ___, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984), wherein this aggravating circumstance was found to exist. In that case, as in the present case, the victim was extensively and viciously cut with a knife and, as here, was alive during the attack. Again, the trial court committed no error in instructing the jury upon and finding this aggravating circumstance.
The defendant finally argues that the trial court improperly denied his motion for a mistrial after the prosecutor, for the purpose of impeaching his credibility, asked whether he had previously been charged with an offense for which he had not, in fact, been convicted. The record reflects that on cross-examination of the defendant before the jury, the following transpired:
 "Q. [by Mr. Gavin] Mr. Jefferson, is it not true that you were charged with the offense of Robbery in Lee County, in 1972, and you entered a plea of guilty to the reduced charge of Grand Larceny?
 "[Mr.] MEADORS — May it please the court, I would like to interpose an objection.
"COURT — Sustained.
 "[Mr.] MEADORS — My objection goes to the fact that this is a conviction for impeachment purposes, but something other than a conviction has been presented to the jury and —
 "COURT — I know what your objection goes to and that's why I sustained your objection.
 "[Mr.] MEADORS — And ask that — first of all, I would like to move for a mistrial on the grounds that the reference to the defendant being charged with robbery in connection with the attempt to use the conviction of Grand Larceny for impeachment purposes.
"COURT — Motion denied.
 "[Mr.] MEADORS — For the record, I would like to ask the Court to instruct the jury to disregard what they have just heard.
 "COURT — Members of the jury, it's improper to bring up at this time what someone might have been charged with or what this defendant might have been charged with having done on a previous occasion. It is only proper to bring up at this time, any offense which he might have been found guilty of, or plead guilty to on a previous occasion. So, totally disregard any reference that might have been made as to what the original charge was that brought him into court somewhere, and you are to consider only what if anything, he has [been] shown to have plead guilty to, or otherwise found guilty of. So, totally disregard and put out of your mind, put out of your consideration altogether, any crime or any charge that might have been brought against him, unless it be shown to you that he was either convicted of that, or plead guilty to it."
A trial court's ruling on a motion for a mistrial is reviewable on appeal, Stennett v. State, 340 So.2d 65 (Ala. 1976); however, such a motion is addressed to the sound discretion of the trial court, and its ruling will not be reversed in the absence of a clear showing of abuse of discretion. Shadle v. State, 280 Ala. 379, 194 So.2d 538 *Page 1115 
(1967). A defendant, when testifying in his own behalf, may be questioned on cross-examination as to whether he has been convicted of a crime involving moral turpitude for the purpose of attacking his credibility as a witness. Section 12-21-162, Ala. Code 1975. However, whether a defendant has been guilty of wrongful conduct or the commission of an offense for which there has been no conviction is not a proper inquiry. Parker v.State, 280 Ala. 685, 198 So.2d 261 (1967); Anderson v. State,354 So.2d 1156 (Ala.Cr.App.), cert. denied, 354 So.2d 1161
(Ala. 1977).
In the instant case, the question asked of the defendant was improper, but not to the extent that, notwithstanding the trial court's strong admonition to the jury, a mistrial was mandated. Furthermore, the possibility that the jury could have considered the robbery charge as an aggravating circumstance was eliminated, not only by the trial court's admonition immediately following the question, but also by the oral instructions given the jury at the close of the sentencing hearing. The trial court instructed the jury that under the evidence of the case it could only consider two possible aggravating circumstances: that the capital offense occurred during the commission of a burglary, and that the capital offense was especially heinous, atrocious, or cruel. The robbery charge did not relate to either of those two aggravating circumstances. As to mitigating circumstances, the trial court instructed the jury as follows:
 "What about mitigating circumstances? Our law says that mitigating circumstances shall include, but not be limited to the following. And, I am going to give you a list of things which may be considered by you as mitigating circumstances if you find them to exist in this case. One, the defendant has no significant history of prior criminal activity. I will repeat that. The defendant has no significant history of prior criminal activity. By that we mean, prior criminal activity prior to the killing of Marion Stone, therefore, you would consider only what criminal activity or lack of it there was prior to the death of Marion Stone. In that regard, you could consider only such crimes or offenses which this defendant may have been found guilty of, or plead guilty to. You may not consider any offenses that he was charged with though not found guilty of or plead guilty to. In other words, since someone is charged with an offense does not mean that he is guilty of it by any means, and you as a jury may not consider anything that he may have been charged with in the past, as a circumstance against him. You are entitled to consider only such crimes or offenses that he may have plead guilty to, or been found guilty of. That is one possible mitigating circumstance."
We find no abuse of discretion on the part of the trial court in denying the motion for a mistrial, and we further find that its prompt admonition immediately following the question and its subsequent instructions overcame any prejudicial effect which the question might have otherwise had on the jury.[6] SeeFavor v. State, 389 So.2d 556 (Ala.Cr.App. 1980); and Ellis v.State, 244 Ala. 79, 11 So.2d 861 (1943).
Moreover, the trial court, which is the final sentencing authority in capital cases, did not consider the robbery charge in its sentence findings. The trial court found to exist only the two aggravating circumstances on which it had charged the jury.[7] The robbery charge does not relate *Page 1116 
to either of those. The trial court refused to find, as a mitigating circumstance, that the defendant had no significant history of prior criminal activity. However, this was based upon a finding of four previous felony convictions and did not take into consideration the robbery charge.
In Coulter v. State, 438 So.2d 336 (Ala.Cr.App. 1982),affirmed, 438 So.2d 352 (Ala. 1983), evidence of prior criminal activity which had not resulted in a conviction was injected into the sentencing hearing. The trial court, in that case, instructed the jury that that evidence was not to be considered in its determination of aggravating circumstances, and the trial court did not consider the evidence in sentencing. This Court affirmed the judgment of the Court of Criminal Appeals, which held that, under those circumstances, a new sentencing hearing was not required. 438 So.2d at 348-49.
The defendant's remaining contentions were fully and correctly decided by the Court of Criminal Appeals. We, too, have reviewed the propriety of the death sentence in this case, pursuant to the requirements of § 13A-5-53 (a), Ala. Code 1975, and Beck v. State, supra, and find that there were no errors adversely affecting the rights of the defendant. Therefore, the judgment of the Court of Criminal Appeals is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, EMBRY, BEATTY and ADAMS, JJ., concur.
FAULKNER, J., not sitting.
[1] The 1975 capital punishment statute, as contained in §§ 13-11-1 through 13-11-9, was carried over intact to the new criminal code as §§ 13A-5-30 through 13A-5-38. These sections of the new criminal code were repealed, effective July 1, 1981, by the 1981 capital offense statute, but only as to conduct occurring on or after July 1, 1981. Therefore, conduct occurring before July 1, 1981, as in the present case, is governed by the pre-existing law, i.e., §§ 13A-5-30 through 13A-5-38. See Spears v. State, 428 So.2d 174 (Ala.Cr.App. 1982).
[2] The trial court, pursuant to § 13A-5-46 (f), Ala. Code 1975, instructed the jury that a sentence of death could be recommended upon a vote of ten jurors. The Court of Criminal Appeals correctly held that this was error because §§ 13A-5-39
through 13A-5-59, Ala. Code 1975, applied only to conduct occurring after 12:01 a.m. July 1, 1981. The act for which the defendant was tried occurred on April 17, 1981, before the effective date of those code sections. The section instructed upon by the trial court was, therefore, inapplicable and was erroneously used as the basis for the instruction. In addition,Beck v. State, 396 So.2d 645 (Ala. 1981), required that a recommendation of a sentence of death be unanimous. Accordingly, the trial court's instruction to the jury that the recommendation of a sentence of death could rest upon a vote of only ten jurors was clearly prejudicial to the defendant. The trial court also failed to instruct the jury "to avoid any influence of passion, prejudice or other arbitrary factor while deliberating and fixing the sentence," as required by Beck v.State, supra, at 663.
[3] The newly impanelled jury, which was properly instructed to avoid the influence of passion, prejudice, or any other arbitrary factor, unanimously recommended that the defendant be sentenced to death. The trial court again independently weighed the aggravating and mitigating circumstances and sentenced the defendant to death.
[4] See Appendix A to the opinion of the Court of Criminal Appeals, dated May 24, 1984.
[5] Formerly § 13-11-6, Ala. Code 1975.
[6] The fact that the defendant did not answer the question renders even more improbable any possible prejudicial effect.May v. State, 42 Ala. App. 401, 166 So.2d 860 (1963), cert.denied, 166 So.2d 865 (Ala. 1963).
[7] In Alabama, an aggravating circumstance constitutes an element of the capital offense, must be averred in the indictment (§ 13A-5-31, Ala. Code 1975), and must be proven beyond a reasonable doubt. The jury's verdict that the defendant was guilty of the capital offense would mean that the State had already established the aggravating circumstance of murder during a robbery. Therefore, three aggravating circumstances were actually found to exist in this case. Beckv. State, supra.