**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald G. RICHARDSON and Robert H.
Wilson, Defendants-Appellants.**

**Nos. 76–2020 and 76–2021.**

United States Court of Appeals,
Seventh Circuit.

Argued June 13, 1977.

Decided Sept. 26, 1977.

Edmund B. Moran, Jr., Chicago, Ill., Frank J. Gray, Fort Wayne, Ind., for defendants-appellants.

James B. Young, U.S. Atty., Kennard P. Foster, Asst. U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before PELL and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.*

BAUER, Circuit Judge.

On April 2, 1976, two men armed with handguns robbed the Eastgate Branch of the Indiana National Bank in Indianapolis, Indiana of about $40,000. Several bank employees and patrons witnessed the robbery, and the bank's surveillance cameras recorded the events.

At trial, defendant Wilson was identified as one of the robbers by seven eyewitnesses to the robbery. One eyewitness identified defendant Richardson as the other robber; three eyewitnesses testified that Richardson resembled the other robber. In addition, photos of the robbers taken by the bank surveillance cameras were shown to the jury.

A palm print found inside a teller's cage where one of the robbers was seen to have propelled himself to obtain money was identified at trial as Richardson's by an FBI fingerprint specialist.

In addition to the above evidence against the defendants, several items seized from the defendants at the time of, or shortly after, their arrests, identical to items used in the bank robbery, were admitted at trial.

Defendants were convicted of aggravated bank robbery in violation of 18 U.S.C. § 2113(d). They present several arguments for reversal on appeal. We affirm and discuss the most significant of their arguments.

I.

Both Richardson and Wilson argue that they were prejudiced by the submission to the jury of items taken from law enforcement files that contained information from which the jury allegedly could infer that they had engaged in prior criminal activity.

Specifically, Wilson objects to the submission to the jury of two photographs taken of him at the time of his arrest. In the photographs, a sign appears in front of Wilson's body which reads:

FBI     CHICAGO
Apr 6          76
136

Richardson objects to the submission to the jury of a photograph of an FBI file card of his palm print, which contains a blank printed form, the reverse side captioned, "BOB TURNER, Sheriff—OKLAHOMA COUNTY BUREAU OF IDENTIFICATION," and which includes spaces for identification information such as "FBI No.," "Date of Arrest," "Crime," and "Sentence."

■ Initially, we note that neither Wilson's nor Richardson's attorney objected to the admission of the above items on the ground raised here. Any error in their admission is thus waived, unless it rises to the level of plain error. The plain error rule is of particular significance here because the error complained of could have been easily corrected at the time of the admission of the evidence by covering the extraneous information on the exhibits.

■ As to the photograph of Wilson, we do not believe its introduction prejudiced the defendant. The photograph was authenticated at trial by an FBI agent who testified that it depicted Wilson shortly after his arrest by the FBI on April 6, 1976. The information on the sign in the photograph told the jury no more about Wilson's contacts with the FBI than did the testifying agent. It merely listed the date of the picture, April 6, 1976, and the fact that it was taken by the FBI. There was no reference to any past encounters with law enforcement agencies. In view of the necessi-

---

* The Hon. William J. Campbell, United States District Court for the Northern District of Illinois, is sitting by designation.

ty of admitting a photograph of Wilson taken near the time of the robbery for comparison with the bank surveillance photographs, the admission of his photograph was proper.

■ The admission of the Richardson palm print is more problematic. As Richardson argues, the material on the reverse side of the card implies that Richardson had past contacts with a law enforcement agency. From this the jury could infer, at a minimum, that he had been arrested in the past. Evidence that manifests such an implication of past criminal behavior could have prejudiced Richardson and would, if presented independently, have been inadmissible because Richardson did not put his character into issue at trial.

While the submission of the reverse side of the palm print card to the jury possibly could have been somewhat prejudicial to Richardson, we do not think that the possible prejudice engendered was severe enough to constitute plain error. Unlike the occurrences in the cases relied upon by Richardson, there was no emphasis put on the potentially prejudicial aspect of the exhibit. No testimony accompanied the admission of the exhibit that might have focused the jury's attention on its potentially prejudicial aspects as occurred in *Ralls v. Manson,* 375 F.Supp. 1271, 1286 (D. Conn. 1974), *rev'd on other grounds,* 503 F.2d 491 (2d Cir. 1974), nor did the judge unduly focus the jury's attention on the exhibit by engaging in a discussion about how the photos should be covered in front of the jury as occurred in *United States v. Harrington,* 490 F.2d 487, 495–96 (2d Cir. 1973). More important, none of the identifying information such as "FBI No.," "Date of Arrest," "Crime," or "Sentence" was filled in, and the nature of the defendant's prior contact with Oklahoma law enforcement officials was oblique. Accordingly, we believe the possibility of prejudice that resulted from submission of the reverse side of the palm print card was remote. Moreover, any possible prejudice easily could have been prevented by defense counsel if he had objected to the submission at trial. In view of the above, we hold that the submission of the card was not plain error affecting the substantial rights of the defendant within the meaning of Rule 52 of the Federal Rules of Criminal Procedure.

### II.

■ Wilson argues that the bank surveillance films and the photographic prints taken from the films were admitted without an adequate foundation because the Government failed to establish a complete chain of custody of the films.

Wilson's argument is totally invalid; eyewitnesses to the robbery authenticated the surveillance photographs by observing them at trial and testifying that they fairly and accurately depicted the robbery. No further authentication of photographs is required. Fed. Rule Evid. 901(a); *Kleveland v. United States,* 345 F.2d 134, 137 (2d Cir. 1965); McCormick, *Evidence* § 214, at 530–31 (2d ed. 1972).

### III.

Richardson argues that the district court should have granted his pre-trial motion to suppress the admission at trial of a blue leisure suit that was seized from a closet during a search of an apartment leased by one Joyce Barba and jointly occupied by Barba and Richardson. Barba consented to the search of the apartment, and Richardson does not challenge the validity of that consent. His argument is that Barba's consent did not give the FBI authority to search the closet in which the leisure suit was found because that closet was used exclusively by him. According to Richardson, he alone had authority to consent to its search because he alone had a privacy interest in the closet.

■ We believe that Barba's authority to consent to a search of the apartment extended to a search of the closet. This case is not comparable to the one Richardson posits in which a defendant-tenant claims exclusive occupancy to several rooms in a building occupied by a consenting landlord. *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). Rather, it

# 480

is closer to the case in which a defendant claims exclusive use of a portion of a jointly used duffel bag to suppress the fruits of a search consented to by the person using the other portion. *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). The Supreme Court held in *Frazier:*

> "We will not, however, engage in such metaphysical subtleties in judging the efficacy of [the] consent. Petitioner [defendant], in allowing [the other user] to use the bag and in leaving it in his house, must be taken to have assumed the risk that [the other user] would allow someone else to look inside. We find no valid search and seizure claim in this case." *Id.* at 740, 89 S.Ct. at 1425.

Likewise, Richardson must be taken to have assumed the risk that Barba would allow someone to search the closet that was merely a part of their jointly occupied bedroom.

We are confident that, as a matter of policy, our result is proper, for

> "[t]he police might be deterred from employing consent searches altogether if they were required to ascertain the ownership or possession or custody of every article or space on the premises searched. The metaphysical subtleties would be endless and consent searches would be

lost from the law enforcement arsenal." *United States v. Robinson,* 479 F.2d 300, 303 (7th Cir. 1973).

## IV.

The defendants next challenge the charge to the jury in several respects.

### A.

■ Wilson claims that the district court erred by instructing the jury as to only one of two lesser included offenses to the crime of aggravate bank robbery. The defendants were charged with bank robbery, accompanied with assault or the putting in jeopardy of human life, 18 U.S.C. § 2113(d),[1] and the trial judge instructed the jury that they could find the defendants guilty of that offense or the lesser included offense of bank robbery accomplished by force and violence or intimidation, 18 U.S.C. § 2113(a).[2] Wilson does not object to this instruction, but argues that the court erred by failing to instruct the jury as to the additional lesser included offense of bank robbery without force and violence or intimidation, 18 U.S.C. § 2113(b).[3]

A lesser included offense instruction

> "is only proper where the charged greater offense requires the jury to find a

---

1. 18 U.S.C. § 2113(d) provides:

   "Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

2. 18 U.S.C. § 2113(a) provides:

   "Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association; or

   Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association or building, or part thereof, so used, any felony affecting

such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

   Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

3. 18 U.S.C. § 2113(b) provides:

   "Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or

   Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

disputed factual element which is not required for conviction of the lesser included offense." *Sansone v. United States,* 380 U.S. 343, 349–50, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965).

Here there was no dispute at trial that the bank robbery was accomplished by force or intimidation, for both robbers carried handguns and threatened people in the bank. Thus, if the defendants were guilty of violating Section 2113(b), they were also guilty of committing the greater offense in Section 2113(a). It would have been superfluous for the judge to instruct the jury on Section 2113(b). Accordingly, no error was committed by not so instructing the jury. See *Little v. United States,* 417 F.2d 912, 916 (9th Cir. 1969).

### B.

Wilson next argues that the court misinstructed the jury as to what constitutes "placing human life in jeopardy" for purposes of 18 U.S.C. § 2113(d). The court told the jury that the term "put in jeopardy" means "to put in danger." Wilson argues that the court also should have instructed the jury that the robbers must have had the objective capability of causing physical harm to persons in the bank in order to convict the defendants under Section 2113(d). *United States v. Marshall,* 427 F.2d 434 (2d Cir. 1970). He interprets this to mean that the jury in this case was required to find that the robbers' handguns were loaded at the time of the offense.

■ We note at the outset that Wilson did not object at trial to the instruction given, nor did he tender a proposed instruction on this issue. More important, the law in this Circuit does not support Wilson's argument. In *United States v. Roustio,* 455 F.2d 366, 371–72 (7th Cir. 1972), we held that the "in jeopardy" element of Section 2113(d) is met when a robbery victim is "placed in an objective state of danger," and that the jury could infer such a state

from evidence that the victim was intimidated by the display and threatened use of a gun by the robber. No finding of a loaded gun was required in that case. In the case at hand, trial evidence established that the robbers brandished their handguns, and that at one point during the robbery one of the robbers, later identified as Wilson, exclaimed, "I'll blow your head off!" From this undisputed evidence, the jurors most certainly could have established that the robbery victims were placed in an "objective state of danger" under the *Roustio* standard if they had been so instructed. Because we believe that the jury would have found that the robbery victims' lives were jeopardized by the defendants even if the judge had more completely defined that element of the crime in his instructions, it was not plain error to omit a more comprehensive instruction. See *United States v. Marshall, supra* at 438.

### C.

Richardson next complains of the trial court's failure to instruct the jury on the weight to be given the expert opinion testimony identifying the palm print found in the teller's cage. Richardson, who was identified by the expert as the prints' maker, argues that the court's omission prejudiced his defense.

■ In view of Richardson's failure to tender such an instruction or even to object to the trial court's failure to give such an instruction, his complaint on appeal has a hollow ring. We find no plain error in the trial court's omission in view of the fact that the court otherwise gave comprehensive instructions on credibility determinations.[4] As the jury was made aware of its responsibilities in weighing the testimony of various witnesses, we hold that it was not plain error for the trial judge not to instruct the jury separately on factors to be taken into account in weighing expert opinion testimony.

---

4. For example, the court instructed the jury:

"It is the province of the jury to determine the credibility of each witness and weight to be given his testimony. In weighing the testimony of each witness the jury should consider his relationship to the government or to

the defendant; the government's interest, if any, in the outcome of the case; his manner of testifying, his candor, fairness and intelligence; his bias or prejudice, if any; and the extent to which he has been corroborated or

**482**

### D.

The final challenged instruction is that defining reasonable doubt. Defendant Richardson objects to the following sentence of the instruction given:

"If two conclusions can reasonably be drawn from the law and the evidence, one of innocence, and one of guilt, the jury must adopt the one of innocence." [5]

Richardson argues that this sentence confused the jury and diluted the Government's burden of proof by inviting the jury to engage in a balancing-type analysis that resembles the civil preponderance-of-the-evidence burden of proof.

We fully concur with Richardson's first point. As we said in *United States v. Lawson*, 507 F.2d 433, 443 (7th Cir. 1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975), with regard to definitions of reasonable doubt,

"We note . . . that the phrase is self-defining, that there is no equivalent phrase more easily understood, that every attempt to explain renders an explanation of the explanation necessary, that the better practice is not to attempt the definition, and that any effort at further elucidation tends to misleading refinements."

■■■■ We disagree, however, with Richardson's second point. The "two hypotheses" instruction given here could not have hurt the defense, and probably helped it. In our experience the instruction is normally requested by the defense rather than

the prosecution because it permits the jury to acquit the defendant if the jury finds that a reasonable theory for acquittal exists, regardless of whether the theory for conviction is itself doubt free. Such a method of reaching a verdict is merely a means of restating the reasonable doubt concept as it should be applied in the rare case that involves solely circumstantial evidence. See *United States v. Shaffner*, 524 F.2d 1021, 1023 (7th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976). However, such a method is inappropriate in a case involving direct evidence, such as the instant one, and can only inure to the benefit of the defendant who has presented a theory of the case that is not necessarily the most plausible theory. In light of this effect of the instruction, it could not have harmed the defendants and cannot be cause for reversal of their convictions.

### V.

■■■■ Finally, both defendants seek the reversal of their convictions on the ground that they were denied the effective assistance of counsel at trial in violation of the Sixth Amendment to the Constitution. They each point out instances in which their trial counsel failed to pursue particular lines of examination, failed to object to government questions or the submission of government evidence, and failed to take advantage of certain available procedures that may have produced evidence favorable to their clients.

---

contradicted, if at all, by other credible evidence.

If the jury believes that a witness has wilfully sworn falsely to a material fact in the case, the jury may disregard his testimony in whole or in part, except insofar as it may have been corroborated by other credible evidence."

**5.** The instruction reads in full:

"A defendant in a criminal case is presumed by law to be innocent. That presumption remains with him throughout the trial *unless he is proven guilty* of the crime charged by credible evidence beyond a reasonable doubt.

The burden of proving a defendant guilty beyond a reasonable doubt rests upon the government. This burden never shifts

throughout the trial. The law does not require the defendant to prove his innocence, nor to produce any evidence. If the government fails to prove the defendant guilty beyond a reasonable doubt, the jury must acquit him.

A reasonable doubt means what the words indicate, a doubt that is reasonable, taking into consideration all of the evidence and the law as contained in these instructions. It does not include a fanciful or speculative doubt that does not arise from the law and evidence.

If two conclusions can reasonably be drawn from the law and the evidence, one of innocence, and one of guilt, the jury must adopt the one of innocence."

After examining the trial record in this case, we do not agree that trial counsels' performances fell below the "minimum standard of professional representation." *United States ex rel. Williams v. Twomey,* 510 F.2d 634 (7th Cir.), *cert. denied,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975). Accordingly, we find no Sixth Amendment violation.

## VI.

We have carefully considered the defendants' other arguments, including Richardson's claim that the evidence presented was insufficient to support his conviction, and find them to be without merit.

AFFIRMED.