Appellant was charged in a three-count indictment for grand larceny, buying, receiving and concealing stolen property, and burglary in the second degree. At the close of the evidence, the trial judge granted a motion to exclude as to the counts charging grand larceny and buying, receiving and concealing stolen property. The jury found appellant "guilty as charged of burglary." The trial judge set sentence at ten years imprisonment.
Richard Carl Needham testified that he lived at 1441 Forty-fourth Street, West, Birmingham, Jefferson County, Alabama. On February 10, 1978, Mr. Needham left his home about 2:00 p.m. Mr. Needham recalled that he left the house locked and unoccupied. Approximately forty minutes later, Mr. Needham returned home to find the back door slightly ajar. Inside the house, drawers had been emptied and papers strewn on the floor, clearly indicating to Needham that the house had been burglarized. Among the items missing were $500.00 in cash; a Smith and Wesson .38 caliber revolver, valued at $140.00; a man's gold pocket watch, valued at $35.00; and several credit cards. Mr. Needham summoned the police immediately after discovering the burglary. The police inquired about what had been stolen and began looking for fingerprints. None of the missing items had been returned to Mr. Needham as of the date of the trial.
Sergeant R.L. Berry, with the Birmingham Police Department, testified that he conducted the investigation of the burglary in question. Sergeant Berry stated that, during his investigation of the case, he interviewed one Griselda McCants. Subsequently, the defense requested voir dire examination of Sergeant Berry. On voir dire, it was brought out that Griselda McCants was the appellant's girlfriend who was found in possession of Mr. Needham's credit cards. This discovery led to a comparison of appellant's fingerprints with latent fingerprints recovered from the scene. The trial judge ruled that the witness would be allowed to testify in the presence of the jury only that he arrested the appellant as a result of conversations with one Griselda McCants. The fact that appellant was already in jail at this point was ruled inadmissible. When the jury returned, Sergeant Berry's testimony was limited to the facts allowed by the judge's ruling.
Evidence Technician Richard K. Crocker, with the Birmingham Police Department, *Page 883 
testified that he participated in the investigation of the alleged burglary in question. Officer Crocker processed several articles searching for latent fingerprints that might be used for evidence. Officer Crocker explained to the jury the procedure for lifting latent fingerprints from a surface. Officer Crocker identified State's Exhibit One as being an envelope containing a latent fingerprint lift card, which he recognized from his initials on the back of the card. The card also contained the date, time and place from which each fingerprint was lifted.
Officer L.D. McDonald, with the Birmingham Police Department, testified that he had been employed at the City Jail for nine years. Officer McDonald testified that the general procedure of being admitted to jail involved being fingerprinted. Officer McDonald stated that the appellant had been admitted to jail and fingerprinted "about a year or two ago" (R. p. 57). At this point, the defense objected and requested voir dire examination of the witness.
On voir dire examination, it was brought out that State's Exhibit Two was the so-called master card on the appellant. This card included references to previous offenses and was dated February 9, 1977. It was shown that the fingerprints on the card were taken on February 9, 1977. The appellant's fingerprints were not re-taken because, at the time the instant charges were filed against him, he was in jail.
A photostatic copy of the master card, State's Exhibit Four, with "all references to previous offenses" deleted was allowed into evidence. The trial judge kept custody of the original master card for the record. The trial judge allowed the date, February 9, 1977, to remain on the photostatic copy of the master card because Officer McDonald had testified that appellant's fingerprints were taken "about a year or two ago" (R. pp. 57, 65).
When the jury returned, the trial judge instructed them to draw no conclusions from Officer McDonald's statement that appellant had been fingerprinted "about a year or two ago" (R. pp. 57, 67). The testimony served only to show the fact that appellant had previously been fingerprinted and that the fingerprints contained on the master card were those of the appellant. During Officer McDonald's testimony, State's Exhibit One, the latent fingerprint lift card, was admitted into evidence over objection by the defense.
Fingerprint Technician Donna Vogel, with the Birmingham Police Department, was qualified on the stand as an expert in her field. Officer Vogel identified State's Exhibits One, Three and Four as being the latent fingerprints, the master card (formerly State's Exhibit Two) and the photostatic copy of the master card, respectively. Officer Vogel's testimony established the proper chain of custody with respect to State's Exhibits One and Three. Officer Vogel explained that, based on her training and experience, the latent fingerprints, marked as State's Exhibit One, were made by the thumb, index and ring fingers of the appellant's right hand. Officer Vogel stated that her comparison of the appellant's known fingerprints on State's Exhibit Three with the latent fingerprints on State's Exhibit One yielded a total of seventy-three points of identification.
At the close of Officer Vogel's testimony, the State rested its case. The defense moved to exclude the State's evidence, which motion was denied by the trial judge with respect to the burglary count. No evidence was presented by the appellant. After the trial judge's oral charge, to which no exception was taken, the case went to the jury on the charge of burglary.
 I
Appellant argues on this appeal that the trial judge erred in allowing State's Exhibit Four, the photostatic copy of the appellant's master card, to be admitted into evidence over objection because of certain extraneous, prejudicial information thereon contained. Appellant argues the jury was prejudiced by the date of arrest, February 9, 1977, the list of five aliases, and the F.B.I. number, 414102K1, all of which appeared on State's Exhibit Four. This information allegedly gave the jury sufficient *Page 884 
cause to infer that the appellant had committed prior offenses.
In Holsclaw v. State, Ala.Cr.App., 364 So.2d 378 (1978), cert. denied, Ala., 364 So.2d 382 (1978), this Court stated the general rule:
 ". . . It is fundamental that the accused in a criminal trial is entitled not to have his prior criminal record brought before the jury if he chooses not to take the witness stand, and if the evidence of collateral offenses does not specifically fit within an enumerated exception to the general rule of exclusion." (Citations omitted)
We cannot ignore the possible prejudicial effect on the jury in this case from the admission of State's Exhibit Four. The extraneous information contained on the exhibit reasonably implied the existence of a prior criminal record of the appellant. Moreover, we cannot fit this evidence into one of the enumerated exceptions to the general rule of exclusion. See Gamble, McElroy's Alabama Evidence, § 69.01 (3d Ed. 1977). Moreover, when we consider that a more recent set of appellant's fingerprints was available to the State to use at trial, we must conclude that the error here shown was entirely avoidable.
The fact that the trial judge instructed the jury to consider State's Exhibit Four for the limited purpose of identification, does not eradicate the effect on the minds of the jury of the knowledge of the accused's prior criminal record. The mere existence of recorded fingerprints does not per se imply the existence of a criminal record. The error in this case was committed by showing the jury the additional extraneous and highly prejudicial information contained on the photostatic copy of the appellant's master card. The trial judge was, no doubt, aware of the effect of the introduction of this kind of evidence because he expunged other portions of the appellant's master card which he wisely deemed objectionable. Nevertheless, we feel that the introduction of State's Exhibit Four served to place before the jury indirectly information which the State, by virtue of the appellant's not having taken the stand, was forbidden to present directly. See Williams v. State, Ala., 350 So.2d 708 (1977);Holsclaw v. State, Ala.Cr.App., 364 So.2d 378 (1978), cert. denied, Ala., 364 So.2d 382 (1978); Scott v. State, Ala.Cr.App.,353 So.2d 36 (1977), cert. denied, Ala., 353 So.2d 40 (1977). See also, United States v. Turquitt, 557 F.2d 464 (5th Cir. 1977);United States v. McFadyen-Snider, 552 F.2d 1178 (5th Cir. 1977);United States v. Cochran, 546 F.2d 27 (5th Cir. 1977); UnitedStates v. Cohen, 544 F.2d 781 (5th Cir. 1977).
As noted in Scott, supra:
 "The issue here presented was dealt with by our Supreme Court in the recent case of Williams v. State, 350 So.2d 708. Justice Faulkner, speaking for the Court, framed and answered the issue as follows:
 "`The issue presented is, does a plea of not guilty, where the defendant offers no other defense, and where the witness made a positive identification based upon her observation of defendant at the first robbery, place his identity in issue, so as to justify admission of a separate and distinct subsequent offense. The answer is no. Admission of evidence of the subsequent robbery is reversible error.'" (Emphasis supplied.)
In the instant case the defendant presented no evidence after pleading not guilty. The admission of the master card with the prejudicial matter on it subtly suggested guilt of other offenses. Thus, error is shown.
Therefore, we must reverse the appellant's conviction and remand the cause for a new trial in conformance with the holdings of this Court.
 II
Appellant asserts that the trial judge improperly commented on the weight of the evidence in response to a question from one of the jurors at the close of the evidence. That colloquy follows (R. pp. 98-99): *Page 885 
 "A JUROR: Yes, sir. I was just wondering how they get these fingerprints, how you lift one and how you compare it, how do they find it out of all the millions, they have got?
 "THE COURT: That is something I cannot answer. The reason I can't answer it, the law says a state judge cannot comment ever on the evidence and I could not answer that because I can't tell you that. I can't tell you anything about the case, as a matter of fact, but both sides have rested and you are going to have to decide this case on the testimony which you have heard in this courtroom from this witness stand or from the exhibits down here.
 "Now about that question, I can't answer it. Does anyone else have any others? I am not very helpful but the law says I can't, so I can't.
 "All right, we'll argue the case. The State rests, the defendant rests. There is no further testimony. Proceed, Mr. Jones."
It is clear to this Court that there was no improper comment on the evidence in the above-quoted portion of the record.
Appellant further asserts that the trial judge improperly commented on the weight of the evidence during his oral charge to the jury (R. p. 109):
 "Now one last thing. I have mentioned before in the course of the trial there was some comment made about known prints. That is, prints that had been previously made. I just remind you of this: that those prints are in for the limited purpose only of identification in this case. The when, where, how those prints came in the possession of the police whenever they were or wherever they were is immaterial to this case. The only purpose for that is they are the known prints of the defendant and it is for that limited purpose only that it is in."
At the close of the oral charge, the trial judge asked the parties if they had any objections. Both parties responded in the negative. It thus appears that the appellant did not properly preserve his objection. Absent an objection and ruling at the trial court, there is nothing for this Court to review. Cox v.State, 280 Ala. 318, 193 So.2d 759 (1967). Hence, we find no merit to this assertion of error.
For the error shown in Part I of this opinion, we reverse and remand for a new trial.
REVERSED AND REMANDED.
All the Judges concur.