This is a capital murder case. A detailed statement of the facts is contained in the opinion of the Court of Criminal Appeals, Johnson v. State, 507 So.2d 1337 (Ala.Cr.App. 1985).
Anthony O'Hara Johnson, the defendant herein, was convicted in the Circuit Court of Jefferson County and sentenced to death for murdering William Albert Farmer while robbing him; the sentence was pursuant to § 13-11-2(a)(2), Code 1975 (repealed 1981).[1] The Court of Criminal Appeals affirmed the conviction and sentence. Johnson v. State, 399 So.2d 859 (Ala.Cr.App. 1979). This Court affirmed the conviction but remanded to the Court of Criminal Appeals with directions for it to order a new sentencing hearing, Johnson v. State, 399 So.2d 873 (Ala. 1979), which it did, Johnson v. State, 399 So.2d 875
(Ala.Cr.App. 1980). On return to remand in the Court of Criminal Appeals, the defendant's conviction was reversed and the case remanded on the authority of Beck v. State,396 So.2d 645 (Ala. 1980). See Johnson v. State, 399 So.2d 875
(Ala.Cr.App. 1981).
The defendant was again tried and convicted for the capital offense. Following a sentencing hearing, the jury unanimously recommended the death sentence. After holding a second sentencing hearing, the trial court sentenced the defendant to death. The Court of Criminal Appeals affirmed the defendant's conviction and death sentence and later overruled his application for rehearing. The defendant then filed a petition for writ of certiorari, which we granted pursuant to Rule 39(c), Ala.R.App.P. We reverse and remand for a new trial.
The defendant contends that the admission into evidence of state's exhibit "EE," a fingerprint record card, although not objected to at trial, constitutes plain error requiring reversal of his conviction. We agree.
In its opinion, the Court of Criminal Appeals, after noting its scope of review in death penalty cases under Rule 45A, Ala.R.App.P., addressed the defendant's contention thusly:
"State's exhibit 'EE' was a police fingerprint card. On the front of the card are the name of the appellant Johnson, a series of police numbers and an FBI number, the fingerprints themselves, and the signature of the taker of the impressions, and the date taken. The reverse side of the fingerprint card contains the name of the appellant, his signature, the offense charged at the time the fingerprints were taken, a description, and other information. Also on the back of the card is a list of dates of arrests. The arrest list shows an arrest for burglary in 1977 followed by a release, an arrest for burglary and grand larceny in *Page 1353 
1977 followed by a release, an arrest in 1978 for grand larceny from a person followed by a release, and the present charge of murder in 1978 followed by a delivery to the sheriff's office. The card also shows the original arrest in 1973 for robbery followed by a delivery to the sheriff's office.
". . .
"As a preliminary matter, we note that fingerprints have long been held to be admissible in Alabama courts. Leonard v. State,18 Ala. App. 427, 93 So. 56 (1922). On the other hand, it is equally well-settled that:
 " 'On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried. This is a general exclusionary rule which prevents the introduction of prior criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question.'
C. Gamble, McElroy's Alabama Evidence § 69.01(1) (3rd ed. 1977), hereinafter cited as McElroy's.
"The rule is similar in this state as regards prior arrests; this court in Paul v. State, 47 Ala. App. 115, 251 So.2d 246, cert. denied, 287 Ala. 739, 251 So.2d 248 (1971), stated: 'Prior arrests of the accused on other charges which have no relevancy except as tending to show his bad character are not admissible. . . .' Id., 47 Ala. App. at 117, 251 So.2d at 248.
"Other courts have grappled with the problem of receiving into evidence master fingerprint cards that contain a record of prior convictions or prior arrests, see e.g., United States v.Dressler, 112 F.2d 972 (7th Cir. 1940). In the case of a photograph with an indication of a criminal record written on the back, our courts have approved the procedure of obliterating or covering the extraneous matter. Burkett v.State, 439 So.2d 737 (Ala.Cr.App. 1983), with an admonition to the jury to 'leave it covered up.' See also Moon v. State,22 Ariz. 418, 198 P. 288 (1921), and State v. Viola, 82 N.E.2d 306
(Ohio Ct. App.), app. dism'd, 148 Ohio St. 712, 76 N.E.2d 715
(1947), cert. denied, 334 U.S. 816 [68 S.Ct. 1070,92 L.Ed. 1746] (1948). This court has held that in order to preserve error from the admission of identification material with evidence of a criminal record on the back, an objection specifically detailing the error must be made; otherwise, the error is not preserved for appellate review. Dorsey v. State,406 So.2d 457 (Ala.Cr.App. 1981). We have also held, however, in Brown v. State, 369 So.2d 881 (Ala.Cr.App. 1979), that admission of a fingerprint record card such as the one employed by the Birmingham Police Department was, in that case, reversible error. 'The extraneous information contained on the exhibit reasonably implied the existence of a prior criminal record of the appellant.' Id., at 884. The court, per Judge Tyson stated:
 " 'The mere existence of recorded fingerprints does not per se imply the existence of a criminal record. The error in this case was committed by showing the jury the additional extraneous and highly prejudicial information contained on the photostatic copy of the appellant's master card. . . . Nevertheless, we feel that the introduction of State's Exhibit Four served to place before the jury indirectly information which the State, by virtue of the appellant's not having taken the stand, was forbidden to present directly.' (Citations omitted.) Id.
"Thus the issue is presented to us as stated in Annot., 28 A.L.R.2d 1135 (1953):
 " 'The introduction in evidence of a fingerprint record containing extraneous material which in itself is incompetent may or may not constitute reversible error, depending on such factors as whether the material was or was not seen by the jury or whether the objection thereto was waived by the defendant.'
"Addressing first the issue of whether the material was or was not seen by the jury, we note first that photocopies were made of exhibit 'EE.' Further, we note that thereafter there was a side bar conference held at the request of the defense *Page 1354 
counsel. The state then established that the photocopy of 'EE' was a copy of the fingerprints kept in the file, so the substitutes were received into evidence. It is not clear whether a photocopy of only the front of 'EE' was received into evidence or whether a copy of both front and back were received into evidence. This may have been the subject of the side bar conference. The front of the card shows the name, 'Anthony O'Hara Johnson' and aliases, 'Tony Johnson' and 'Anthony O'Hara Johnson.' The card is signed on the back 'Anthony O'Harry Johnson.' The 'aliases' are simply versions of the principal name shown. At the left of one of the blanks on the card are the letters 'FBI' and thereafter are printed the numerals and letter constituting the FBI number. To the left of another blank are the words 'Police No.' and following that are a typed number and five handwritten numbers. The card is signed on the front by Jack T. Brand and dated 10-24-73. Admission, over proper objection, of the data on the front of a similar Birmingham Police Department master fingerprint card alone was held to be reversible error in Brown, even though the back was not in evidence. While there may be doubt whether the jury observed or examined the back of the card, we may certainly infer that they observed the front of the card. It, therefore, initially appears that Brown controls this case and requires us to again reverse the appellant's conviction. However, in Brown, the defense timely objected to the extraneous information being open to inspection by the jury, whereas in the present case, there was no such objection.
"We next consider whether the right to object to the admission of the copy of the card was waived by the appellant. In a noted fingerprint card case, United States v. Dressler, supra, the court recited that no one, not counsel for the state, counsel for the defense, nor the court, was aware of the existence of the defendant's 'criminal history' on the back of the fingerprint card. Such unknowing and unintentional exposures to the jury of such items resulted in reversals inFarese v. United States, 428 F.2d 178 (5th Cir. 1970), andUnited States v. Bruscino, 687 F.2d 938 (7th Cir. 1982) (en banc), cert. denied, 459 U.S. 1228 [103 S.Ct. 1235,75 L.Ed.2d 468] (1983). But that situation did not occur here. The attorneys knew what was on the card. On direct examination, Officer Brand was asked whether the name of the person whose print was taken was on both sides of the card and whether the person was asked to sign the card. To both questions the witness answered affirmatively:
 " 'Q: And I'll ask you, is the name of the person whose print is being taken, is it typed in or placed on this card?
" 'A: Yes, sir.
 " 'Q: And are they asked to sign this particular card?
" 'A: Yes, sir.'
The signature line is on the back of the card where the arrest record appears. Brand testified that his own name appeared on both sides of the card. On direct examination, the following occurred:
 " 'Q: And in the place on the card where the individual whose prints were taken, whose name appears there, please?
" 'A: Anthony O'Harry Johnson.
" 'Q: And does your name also appear there?
" 'A: Yes, sir.
" 'Q: And is it at the bottom of the card?
" 'A: Yes, sir.
" 'Q: And is it at the bottom of the card?
" 'A: Yes, sir.
 " 'Q: And is it on both sides of the particular card?
" 'A: Yes, sir.'
On cross-examination the following occurred:
 " 'Q: Okay. Now, when you sign this fingerprint card, can I see this card, please?'
 " '[The court reporter noted] ([Defense Counsel] looks at card and shows it to the defendant).'
The cross-examination of Officer Brand principally dealt with the authenticity of his signature on the front of the card:
 " 'Q: Officer Brand, you signed these cards, right?
" 'A: Yes, sir.' *Page 1355 
"It would be implausible to believe that the appellant himself as well as his trial counsel did not know that the prior arrest information was on the back of the fingerprint card, especially in light of the court reporter's notation, '[Defense Counsel] looks at card and shows it to the defendant.' Also, the record indicates that the fingerprint card was freely and openly passed amongst the attorneys and the judge. From the foregoing, we find as a fact that the attorneys were conscious and aware of the contents of both the front and the back of the master fingerprint card, a copy of which was admitted into evidence as exhibit "EE." Because of this knowledge, this case is distinguishable from United States v.Dressler, supra, and its progeny, and because there was no objection by defense counsel to the jury's viewing the fingerprint card with the extraneous information thereon, this case is likewise distinguishable from Brown v. State, supra. Instead, this case is more closely akin to United States v.Richardson, 562 F.2d 476 (7th Cir. 1977), cert. denied,434 U.S. 1072 [98 S.Ct. 1257, 55 L.Ed.2d 776] (1978), wherein 'a photograph of an FBI file card of [the defendant's] palm print' was admitted into evidence without objection. The reverse side of that fingerprint card was captioned, 'Bob Turner, Sheriff — Oklahoma County Bureau of Identification,' thus inferring that he had 'past contacts with a law enforcement agency.' Although that card did not contain numbers filled-in on the 'FBI No.' blank, as was the case in the instant appeal, the wording in that opinion aptly applies to the instant appeal:
 " 'Initially, we note that neither Wilson's nor Richardson's attorney objected to the admission of the above items on the ground raised here. Any error in their admission is thus waived, unless it rises to the level of plain error. The plain error rule is of particular significance here because the error complained of could have been easily corrected at the time of the admission of the evidence by covering the extraneous information on the exhibits.
" '. . .
 "While the submission of the reverse side of the palm print card to the jury possibly could have been somewhat prejudicial to Richardson, we do not think that the possible prejudice engendered was severe enough to constitute plain error. . . . Accordingly, we believe the possibility of prejudice that resulted from submission of the reverse side of the palm print card was remote. Moreover, any possible prejudice easily could have been prevented by defense counsel if he had objected to the submission at trial. In view of the above, we hold that the submission of the card was not plain error affecting the substantial rights of the defendant within the meaning of Rule 52 of the Federal Rules of Criminal Procedure.'
Id., at 478-79. We likewise do not believe that this is plainerror, and furthermore, we find that the appellant's action, orinaction, constituted a waiver. To hold otherwise would be toreverse the conviction based on what is in essence invitederror. 'An accused cannot by his own voluntary conduct inviteerror and then seek to profit thereby. It would be a sadcommentary upon the vitality of the judicial process if anaccused could render it impotent by his own choice.' Aldrige v.State, 278 Ala. 470, 179 So.2d 51, 54 (1965). See also Spearsv. State, 428 So.2d 174 (Ala.Cr.App. 1982); McDaniel v. State,418 So.2d 932 (Ala.Cr.App. 1982); McDaniel v. State,418 So.2d 932 (Ala.Cr.App.), cert. denied, 418 So.2d 934 (Ala. 1982);Sullivan v. State, 394 So.2d 76 (Ala.Cr.App. 1981).
"We further conclude that this is a case where evidence ofguilt is so overwhelming that evidence of previous arrests wasnot significant, and its admission was harmless error in lightof the strong evidence identifying Johnson as the perpetrator."
(Emphasis added.)
Rule 45A, supra, provides: "In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by *Page 1356 
reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
Under the "plain error" doctrine, as enunciated in Rule 45A, the Court of Criminal Appeals is required to search the record in a death penalty case and notice any error (ruling or omission) of the trial court and to take appropriate action, "whenever such error has or probably has adversely affected the substantial right of the [defendant]," in the same manner as if defendant's counsel had preserved and raised such error for appellate review.
Initially, in its opinion, the Court of Criminal Appeals correctly acknowledged that the defendant's conviction would be reversed on the authority of Brown v. State, 369 So.2d 881
(Ala.Cr.App. 1979), if his counsel had timely objected to the admission of state's exhibit "EE" at trial. The court, by citing Rule 45A, also acknowledged the exception to the general preservation-of-error rule in death penalty cases ("the Court of Criminal Appeals shall notice any plain error or defect . . . whether or not brought to the attention of the trial court"). Then, relying on United States v. Richardson, 562 F.2d 476 (7th Cir. 1977), cert. denied 434 U.S. 1072, 98 S.Ct. 1257,55 L.Ed.2d 776 (1978), the court summarily declared: "We likewise do not believe that this is plain error, and furthermore, we find that the appellant's action, or inaction, constituted a waiver. To hold otherwise would be to reverse the conviction based on what is in essence invited error."
It is apparent that the Court of Criminal Appeals concluded that a substantial right of the defendant had not been, or probably had not been, adversely affected by the admission of state's exhibit "EE." As we read the opinion, this conclusion is based upon its determination that evidence of the defendant's guilt was "so overwhelming that evidence of previous arrests was not significant, and its admission was harmless error in light of the strong evidence identifying [the defendant] as the perpetrator." However, the proper inquiry here is not whether evidence of the defendant's guilt is overwhelming but, instead, whether a substantial right of the defendant has or probably has been adversely affected. Tell v.State, 285 Ala. 234, 231 So.2d 107 (1970), is a prime illustration. In that case the defendant was convicted and sentenced to death for the rape of a 27-year-old woman. The woman was able to identify the defendant as the man who raped her. Even in light of this eyewitness testimony, the Court considered the admission of other testimony tending to show the defendant's prior criminal activity to be so prejudicial as to warrant a reversal of the conviction.
United States v. Richardson, supra, is distinguishable from the present case. In that case, the defendant was convicted in the United States District Court for the Southern District of Indiana for bank robbery. Although no objection was made at trial, the defendant raised on appeal the improper submission to the jury of information contained on a palm print card. The reverse side of the card made reference to "BOB TURNER, Sheriff — OKLAHOMA COUNTY BUREAU OF IDENTIFICATION." The card also included spaces for certain identification information, such as "FBI No.," "Date of Arrest," "Crime," and "Sentence." The United States Court of Appeals for the Seventh Circuit held that the error did not affect a substantial right of the defendant:
 "The admission of the Richardson palm print is more problematic. As Richardson argues, the material on the reverse side of the card implies that Richardson had past contacts with a law enforcement agency. From this the jury could infer, at a minimum, that he had been arrested in the past. Evidence that manifests such an implication of past criminal behavior could have prejudiced Richardson and would if presented independently, have been inadmissible because Richardson did not put his character into issue at trial.
 "While the submission of the reverse side of the palm print card to the jury possibly could have been somewhat prejudicial to Richardson, we do not think that the possible prejudice engendered *Page 1357 
was severe enough to constitute plain error. Unlike the occurrences in the cases relied upon by Richardson, there was no emphasis put on the potentially prejudicial aspect of the exhibit. No testimony accompanied the admission of the exhibit that might have focused the jury's attention on its potentially prejudicial aspects as occurred in Ralls v. Manson, 375 F. Supp. 1271, 1286 (D.Conn. 1974), rev'd on other grounds, 503 F.2d 491 (2d Cir. 1974), nor did the judge unduly focus the jury's attention on the exhibit by engaging in a discussion about how the photos should be covered in front of the jury as occurred in United States v. Harrington, 490 F.2d 487, 495-96 (2d Cir. 1973). More important, none of the identifying information such as 'FBI No.,' 'Date of Arrest,' 'Crime,' or 'Sentence' was filled in, and the nature of the defendant's prior contact with Oklahoma law enforcement officials was oblique. Accordingly, we believe the possibility of prejudice that resulted from submission of the reverse side of the palm print card was remote. Moreover, any possible prejudice easily could have been prevented by defense counsel if he had objected to the submission at trial. In view of the above, we hold that the submission of the card was not plain error affecting the substantial rights of the defendant within the meaning of Rule 52 of the Federal Rules of Criminal Procedure." (Emphasis added.)
In the present case, the copy showing the front of exhibit "EE" contained information which clearly revealed the defendant's past contacts with law enforcement agencies. From this the jury could have readily inferred, at a minimum, that he had been arrested in the past. In our view, such an inference would have had an almost irreversible impact upon the minds of the jurors.
The state makes the following argument in its brief:
 "In the instant case the fingerprint card was utilized only to provide a basis for a comparison by a fingerprint expert of the defendant's known prints with latent prints found at the scene of the crime and on the property taken. The defendant's attorney, in cross-examination and in closing argument, did not seriously challenge the testimony of the fingerprint expert that seven separate latent fingerprints were those of the defendant. There would have been little reason for the jury to study the fingerprints which appeared on the photocopy of the front of the fingerprint card, and even less to look at the photocopy of the back of the card. The instant case is therefore like Richardson in that little or no attention was drawn to the information on the back of the card."
We do not agree that there was "little reason" for the jury to study state's exhibit "EE." A jury is charged with the duty of reviewing and weighing all of the evidence and there is nothing in the record which suggests that they did not do so in this case. We simply refuse to speculate as to whether the jury actually saw the prejudicial information on state's exhibit "EE."
Therefore, the defendant's conviction is due to be reversed on the authority of Brown v. State, supra, unless it can be said that the defendant waived his right to raise the error on appeal.
The Court of Criminal Appeals concluded that the defendant did waive his right to raise the error on appeal by failing to object to it at trial. In reaching this conclusion, the court's reliance upon Richardson is misplaced. The basis for the Seventh Circuit's affirmance in Richardson was that no substantial right of the defendant was adversely affected by the error, not that the defendant waived his right to raise the error on appeal by failing to object to it at trial.
It appears from a thorough reading of its opinion that the Court of Criminal Appeals was convinced after reviewing the record that the defendant's counsel, being fully aware of the contents of state's exhibit "EE," intentionally remained silent, thus allowing it to come into evidence, presumably for the purpose of "setting up" a reversal if the case was appealed. For this reason, the court apparently concluded that *Page 1358 
the defendant waived his right to raise the error on appeal.
We find it unnecessary to reach the specific question of whether the defendant waived his right to raise the error on appeal by intentionally "inviting error." The Court of Criminal Appeals apparently inferred intentional conduct on the part of defendant's counsel from its "finding" that defendant's counsel was fully aware of the contents of the exhibit. However, there is an equally compelling inference which can be drawn from the record; that is, that defendant's counsel simply did not recognize the error. For this reason, we are compelled to reverse the defendant's conviction and remand the cause to the Court of Criminal Appeals with instructions to that court to direct a new trial.
Because we are reversing the conviction and remanding for a new trial, we do not deem it necessary to address the other issues raised by the defendant.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.
[1] The 1975 capital punishment statute, as contained in §§ 13-11-1 through 13-11-9, was carried over intact to the new criminal code as §§ 13A-5-30 through 13A-5-38. These sections of the new criminal code were repealed, effective July 1, 1981, by the 1981 capital offense statute, but only as to conduct occurring on or after July 1, 1981. Therefore, conduct occurring before July 1, 1981, as in the present case, is governed by the preexisting law, i.e., §§ 1311-1 through 13-11-9. See Spears v. State, 428 So.2d 174 (Ala.Cr.App. 1982).