The appellant was found guilty of the capital offense of murder during a rape in the first degree. Following a separate sentencing hearing held pursuant to § 13A-5-46, Code of Alabama
(1975), the jury unanimously recommended that the appellant be sentenced to death. A hearing was then held pursuant to §13A-5-47, wherein the trial court found the existence of two aggravating circumstances, that the capital offense was committed by the defendant while he was under a sentence of imprisonment and that the defendant had previously been convicted of other felonies involving the use or threat of violence to the person. The court found the existence of no mitigating circumstances. Accordingly, the trial court sentenced the appellant to death, pursuant to § 13A-5-40(a)(3).
We adopt the trial court's findings of fact as an accurate account of this offense:
 "In the late evening on July the 2d 1986, the victim, Bobbie Porter left her home accompanied by three of her grandchildren to go for a walk. This was something that she did almost daily and the route that she took carried her along a dirt road past the house where the defendant, Willie James Tabb, resided. *Page 629 
She would walk along a dirt road that led into an area that was uninhabited. The area consisted of some open fields and timberland, and the road ran by some old abandoned farm buildings. There were also a couple of oil well sites in the area.
 "Along the way that evening and some short distance from the Tabb home, the grandchildren stopped to play in a stream over which the road crossed and Bobbie Porter continued on her walk. The road she took was the only readily accessible route to and from the area. The children continued to play in the area and some hour or more later, while they were playing there, the defendant, Willie Tabb, came by and engaged one of the children in a conversation. He specifically asked the child where was his grandmother. The child knew the defendant and recognized him in the courtroom at the trial.
 "After this, when Bobbie Porter failed to return, the grandchildren went back to their home and shortly thereafter relatives began and continued a search effort in this area. These relatives reported that they went into the area where Bobbie Porter walked and they did not see anyone or anything of any consequence in the area. This search continued and after one relative reported Bobbie Porter missing to the authorities, many people arrived and a concentrated search effort was begun that lasted until late in the night.
 "The search continued the next day with numerous people taking part in the search and at about 4:15 P.M. on the following day, the victim's body was discovered by the occupants of a helicopter that had been called in to search.
 "The body of Bobbie Porter was discovered at the edge of a field, off the route where Bobbie Porter walked. The body had been covered by weeds and other debris. The body was lying face up and was partially disrobed. There were five stab wounds to the chest that were caused by a knife and semen was present in the victim's vagina.
 "During the search for the body, clothes that belonged to the defendant were found in a bag at the edge of the yard behind the defendant's residence, along with a knife that came from the defendant's residence.
 "I [trial court] find that this was the knife that inflicted the wounds that killed Bobbie Porter.
 "The Court further finds that the defendant, Willie James Tabb, raped Bobbie Porter and that during that rape he murdered Bobbie Porter."
We have searched the record, pursuant to Rule 45A, Alabama Rules of Appellate Procedure, in order to determine whether any error has or probably has adversely affected the substantial rights of the appellant. During the presentation of the State's case, Ken Mays, an investigator for the Alabama Bureau of Investigation, testified concerning his participation in the investigation of this offense. He testified as to his role in the chain of custody of certain items of evidence and to his role in taking a statement from the appellant. His testimony established that the appellant was given his Miranda rights and that the statement was given voluntarily. He also read the statement to the jury.
Later in the trial, just prior to the State's resting its case, the State re-called Ken Mays. His second testimony was brief and concerned only another oral statement made to him by the appellant. The following transpired during that testimony:
 "Q: All right, sir. Aside from the written narrative that we have introduced here of what he signed about his activity that particular day, at the very first of the conversation, following your advising Tabb of his constitutional rights, did he make any other oral statement to you?
"A: Yes, sir.
 "Q: And what was that and would you relate the question and answer that the two of you had at the very first of the discussion?
 "[DEFENSE COUNSEL]: Your Honor, I'm going to object to the question as being repetitive. The question was asked the last time this witness was on the stand and he responded. I see no *Page 630 
probative value for him to re-testify or other than to —
"THE COURT: Overruled.
"Q: You may answer.
 "A: In the conversation with Mr. Tabb, he informed me that he had lived in Memphis, Tennessee. I asked him why he was in Millport, Alabama. He said he had moved to Alabama, Millport, Alabama, recently because he was a drug addict and to get off of cocaine. He was wanting to dry off drugs in his words.
"[PROSECUTOR]: That's all. Thank you."
There was no other evidence at trial that the appellant took drugs, nor were drugs involved in any way in the offense. Defense counsel failed to object to this testimony, and the propriety of this testimony was not raised in the briefs on appeal. However, pursuant to Rule 45A, Alabama Rules of Appellate Procedure, we find that this testimony constitutes plain error which "probably has adversely affected the substantial right of the appellant." We can find no purpose in the elicitation of this testimony, other than to show the bad character of the appellant.[1] This evidence was totally irrelevant and immaterial to the instant case and could have substantially prejudiced the appellant, in that it made the jury aware of the fact that the appellant was a drug addict.
In Ex parte Johnson, 507 So.2d 1351 (Ala. 1986), the Alabama Supreme Court held as plain error the admission into evidence by the State of a fingerprint record card, containing a statement of the offense with which the appellant was charged and a list of dates of arrests. The Court acknowledged that such evidence " ' "is not admissible if the only probative function of such evidence is to show his [the accused's] bad character." ' " Id. at 1353. In holding that the card's admission constituted plain error, the Court noted that "the proper inquiry here is not whether evidence of the defendant's guilt is overwhelming but, instead, whether a substantial right of the defendant has or probably has been adversely affected."Id. at 1356.
 "Courts are created to determine matters in issue which require proof. Anything which is neither directly nor indirectly relevant to the issues ought at once to be 'put aside, as beyond the jurisdiction of the tribunal, and as tending to distract its attention and to waste its time.' Jones on Evidence, par. 135, p. 151. . . . The only effect that this could have had would be to prejudice the jury against the defendant. . . . Unless such evidence is legal, relating to the issues involved, no defendant should be burdened with this proof."
Williams v. State, 20 Ala. App. 257, 258, 101 So. 367, 368
(1924) (in which the State attempted to prejudice the defendant by introducing evidence that he offered whiskey to Negroes so that "his moral and social standing would be lowered in the minds of the average jury," id. 101 So. at 368). See alsoMcCarty v. State, 45 So.2d 175 (Ala.App. 1950) (wherein the court held as reversible error testimony by a State's witness, in a robbery prosecution, that the appellant's deceased husband had been engaged in the lottery business; the testimony "was highly prejudicial and shed no light upon the trial,"45 So.2d at 177).
In the present case, Ken Mays's testimony probably adversely affected the appellant's substantial rights. It was clearly introduced as evidence for the jury's consideration, and the trial court instructed the jury that they should consider all of the evidence. The fact that Ken Mays was re-called to the witness stand, just prior to the State's resting its case, may have caused the jury to emphasize this testimony. Moreover, in the prosecutor's closing argument, he mentioned this testimony again, stating: "The chances of this happening, these circumstances coming together again with Willie Tabb there by himself, trying to get off cocaine, drunk six or seven beers, according to his statement, coming out, locking his door, coming out of the house and at that very moment Mrs. Porter by herself coming by there, the circumstances *Page 631 
of that happening again are one in what could we say?"
The appellant's substantial rights were affected because of the damage that this illegal evidence could have had on the appellant's defense. The appellant admitted that he had gone to his house around the time of the offense and that he had spoken to the children as he walked by; however, he denied committing the offense. Therefore, because the appellant's defense was based on his truthfulness, the State's introduction of improper testimony that was intended to show the appellant's bad character and lack of credibility, directly undermined his theory of defense. By showing that the appellant had been a drug addict, Ken Mays's testimony suggested to the jury that the appellant should not be believed. Commonwealth v. Pfaff,477 Pa. 461, 384 A.2d 1179 (1978) (wherein the court held that a prosecutor may not refer to the trial testimony of the appellant as unbelievable because he was "some drug addict").Commonwealth v. Davis, 183 Pa. Super. 347, 132 A.2d 408, 409
(1957) ("a drug addict, because of moral perversion, may be untruthful"); Commonwealth v. El, 273 Pa. Super. 1,416 A.2d 1058, 1064 (1979) (wherein the court noted that "[o]bviously, one who is on drugs and/or withdrawing from drugs may not have as good a recollection of certain incidents as a man who is going about his daily business"). We find that, under the circumstances of this case, the admission of Ken Mays's testimony indicating that the appellant had been a drug addict and was attempting to "dry out" constituted plain error. Therefore, the judgment is due to be reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
All Judges concur.
[1] The appellant did not testify at trial.