IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69934-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| GREGORY JAMES THOMAS, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 27, 2014 |

SCHINDLER, J. — A jury convicted Gregory James Thomas of trafficking in stolen property in the first degree and bail jumping. Thomas appeals, arguing his attorney provided ineffective assistance of counsel by failing to object to the admission of an exhibit that was admitted at trial to prove the bail jumping charge. Because Thomas cannot show prejudice, we affirm.

FACTS

Leslie Brinkman owns a two-story house with a large detached garage in Snohomish County. Brinkman has purchased and sold antiques for approximately 30 years.

Beginning in December 2008, Brinkman rented the house to Connie Roundtree and her daughter Candace Loomey. The garage is excluded from the lease, and only Brinkman had keys to the garage. Brinkman uses the garage to store her antiques,

collectibles, and personal property. Sometime in December 2009, Gregory James Thomas moved into the house with his mother and sister.

In June or July 2010, Brinkman noticed two vintage bicycles were missing from the garage. Brinkman told Roundtree and family members that the bicycles were missing.

In February 2011, Brinkman saw several items that she owned on display at an antique mall in Snohomish, including a china set, vases, jewelry, and fur coats. The following week, Brinkman conducted an inventory of the garage with the help of her family and friends. A number of items were missing including the china set, vases, jewelry, fur coats, and antique furniture. Brinkman valued the missing items as worth approximately $30,000. Brinkman reported the theft to the police.

Brinkman and a police officer then returned to the antique mall to talk to the owners of the mall space where Brinkman saw her missing items. The owners Todd and Jan Humphrey returned a number of items that they purchased from Thomas to Brinkman including the two vintage bicycles, a Chinese rug, glassware, mugs, vases, lamps, and collectible cookie jars. Brinkman estimated the returned property was worth approximately $15,000 to $16,000.

On June 24, 2011, the State charged Thomas with trafficking in stolen property in the first degree in violation of RCW 9A.82.050. On December 14, 2012, the State filed an amended information charging Thomas with additional counts for burglary in the second degree in violation of RCW 9A.52.030, and bail jumping in violation of RCW 9A.76.170(1). As to the bail jumping charge, the State alleged Thomas was released by

a court order on his personal recognizance on the condition that he appear at all court dates, and that he did not appear for the court hearing on June 15, 2012.

The State called a number of witnesses during the three-day jury trial including Brinkman, Todd Humphrey, a family member who helped inventory the contents of the garage, the police officer who assisted Brinkman in recovering her property from the antique mall, and the manager of the Snohomish County Clerk's Office.

Brinkman testified that she typically visited the garage three to five times a year and that after 2009, Thomas was present each time she was there. Brinkman testified she was the only one who had possession of the two keys to the garage and she never gave permission to Thomas or anyone in else in his family to enter her garage.

Todd Humphrey testified that Thomas sold boxes of costume jewelry to Jan Humphrey sometime in late spring or early summer 2010. Todd said that during the summer and fall of 2010, he and Jan purchased many items from Thomas including jewelry, the vintage bicycles, fur coats, and lunch boxes. Thomas told Todd that he obtained the items from his grandmother who recently passed away.

To prove the bail jumping charge, the State introduced certified copies of the "Information" filed on June 24, 2011 charging Thomas with trafficking in stolen property in the first degree, Exhibit 1; a clerk minute entry dated August 1, 2011, Exhibit 2; the August 1, 2011 order on release, Exhibit 3; a minute entry dated April 5, 2012, Exhibit 4; an agreed trial continuance order filed April 5, 2012, Exhibit 5; a June 15, 2012 minute entry, Exhibit 27; and Thomas's driver's license, Exhibit 17. The second page of Exhibit 1, the Information charging Thomas with trafficking in stolen property in the first degree, lists Thomas's address, date of birth, height, weight, eye color, hair color, race, the

originating agency, the agency case number, and the alphanumeric notations "DOL: THOMAGJ403N4[,] SID: WA11466419[,] FBI: 832500T8[, and] DOC: 273820."[1]

Thomas testified on behalf of the defense. Thomas said that after the garage flooded on two separate occasions, Brinkman gave him several boxes of items to throw away. According to Thomas, the boxes contained wet and moldy costume jewelry, dolls, a lunch box, and many other items. Thomas said that he restored and sold many of the items to the Humphreys. Thomas testified that Brinkman gave him the two bicycles as payment for landscaping work and that he sold the vintage bicycles to the Humphreys.

During his testimony, Thomas admitted the items he sold to the Humphreys did not belong to his deceased grandmother. Thomas testified, in pertinent part:

Q. Did you tell Todd and Jan Humphrey that the property came from your deceased grandmother?
A. Yes, ma'am, I did.
Q. Why did you do that?
A. Just like the same old thing, like being a car salesmen [sic]. You tell them a little lady owned it and she only drove it on Sundays. It was just a way to make the sale, to make it easier, get more - - you know, like I told them the first time, I don't want to leave with the stuff, I just want to get rid of it. So, you know, I fabricated a story that this was my grandmother's that passed away and I'm just looking to get rid of it.

Thomas also admitted that he did not appear for the June 15, 2012 court hearing:

Q. Mr. Thomas, did you miss court on June 15, 2012?
A. Yes, ma'am, I did.
Q. Why?
A. Just work, not paying attention to the court dates written down. Got home that evening, looked at my paperwork and of course I missed court that day.

---

[1] DOL (Washington State Department of Licensing), SID (security identifier), FBI (Federal Bureau of Investigation), DOC (Washington State Department of Corrections).

The State called Brinkman and Todd Humphrey as rebuttal witnesses. Brinkman testified she never gave Thomas any property from the garage or disposed of any property stored in the garage because of water damage or mold. Brinkman also testified that she did not ask Thomas to do any landscaping and never gave Thomas the bicycles as payment for landscaping. Todd Humphrey testified there was no sign of water damage or mold on any of the items or boxes he purchased from Thomas.

During closing, defense counsel argued that Brinkman gave Thomas the antiques and collectibles but conceded Thomas was guilty of bail jumping.

The jury found Thomas not guilty of burglary in the second degree. The jury found Thomas guilty of trafficking in stolen property in the first degree and bail jumping. The court imposed a concurrent standard-range sentence of 29 months.

## ANALYSIS

Thomas contends his attorney provided ineffective assistance of counsel by failing to object to the irrelevant and prejudicial reference to the numeric notations for "FBI: 832500T8" and "DOC: 273820" on page 2 of Exhibit 1, the Information charging him with trafficking in stolen property in the first degree.

A criminal defendant has the right under the Sixth Amendment to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In order to prevail on a claim of ineffective assistance of counsel, the defendant must show (1) deficient performance by counsel and (2) that the deficient performance prejudiced the defendant. State v. Turner, 143 Wn.2d 715, 730, 23 P.3d 499 (2001). If the defendant fails to establish either part of the test, we need inquire no further. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

5

To show prejudice, the defendant must show "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. A defendant shows prejudice when "there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different." Hendrickson, 129 Wn.2d at 78. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694.

Thomas cannot show there is a reasonable probability that the result of the trial would have been different but for the failure of his attorney to object to the admission of the FBI and DOC notations appearing on the second page of Exhibit 1. Thomas does not dispute there was overwhelming evidence that he committed the crime of bail jumping. During the State's case in chief, the prosecutor introduced into evidence certified copies of court records to establish Thomas was guilty of bail jumping, including the Information filed on June 24, 2011, Exhibit 1. While the second page of Exhibit 1 lists a number of alphanumeric notations, including "FBI: 832500T8" and "DOC: 273820," there is no explanation of the numeric notations and there was no reference to the notations at trial. Further, during his testimony, Thomas admitted he did not appear at the court hearing on June 15, 2012. And in closing argument, defense counsel conceded Thomas was guilty of bail jumping. Because there was no dispute Thomas was guilty of bail jumping, it is highly unlikely the jury gave any consideration to Exhibit 1 or the numeric notations on the second page of Exhibit 1.

The out-of-state case Thomas cites, State v. Brown, 369 So. 2d 881 (Ala. Crim. App. 1979), is inapposite. In Brown, over the objection of defense counsel, the court admitted into evidence a fingerprint card that listed five prior aliases used by the

defendant, an FBI number, and date of arrest. <u>Brown</u>, 369 So. 2d at 883. A police officer testified the defendant "had been admitted to jail and fingerprinted 'about a year or two ago.' " <u>Brown</u>, 369 So. 2d at 883. On appeal, the court reversed on the grounds that the State not only introduced into evidence the fingerprint card referring to previous convictions, but the testimony of the police officer called attention to the prejudicial information contained in the fingerprint card. <u>Brown</u>, 369 So. 2d at 884. Here, unlike in <u>Brown</u>, Thomas admitted he was guilty of the crime of bail jumping, and no one referred to or called attention to the DOC and FBI numbers noted on the second page of Exhibit 1.

We affirm.

WE CONCUR: